# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LORI CHAVEZ-DEREMER
Secretary of the United States Department of Labor,

Plaintiff-Appellee,

v.

AMERICARE HEALTHCARE SERVICES, LLC;
DILLI ADHIKARI,

Defendants-Appellants.

_____

On Appeal from the United States District Court for the
Southern District of Ohio Eastern Division

BRIEF FOR THE APPELLEE SECRETARY OF LABOR

JONATHAN L. SNARE
Acting Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

SARAH KAY MARCUS
Deputy Associate Solicitor

RACHEL GOLDBERG
Counsel for Appellate Litigation

AMELIA BELL BRYSON
Senior Attorney

LINDSEY ROTHFEDER
Senior Attorney

U.S. Department of Labor
Office of the Solicitor
200 Constitution Ave. NW, N2716
Washington, DC 20210
202.693.7052
Rothfeder.lindsey@dol.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................... viii

STATEMENT OF JURISDICTION ......................................................... 4

STATEMENT OF THE ISSUES ............................................................ 4

STATEMENT OF THE CASE ............................................................... 5

A.    Legal Background ............................................................... 5

      1.  The FLSA and Relevant Amendments to the FLSA ................................ 5

      2.  The Department's 1975 Regulations Implementing the 1974 Domestic Service Amendments ........................................................ 8

      3.  The Supreme Court's 2007 Decision Regarding the Statutory Delegations of Authority and the 1975 Third Party Regulation ............... 9

      4.  The Department's 2013 Rule Updating and Revising the Regulations Implementing the 1974 Domestic Service Amendments .......................... 10

B.    Factual and Procedural Background ............................................ 16

C.    District Court Decision Granting Summary Judgment to the Department ... 18

STANDARD OF REVIEW ................................................................. 20

SUMMARY OF ARGUMENT .............................................................. 21

ARGUMENT ............................................................................. 23

i

I.   THE THIRD PARTY REGULATION IS THE PRODUCT OF
     REASONED DECISIONMAKING WITHIN THE BOUNDS OF THE
     DEPARTMENT'S EXPRESSLY DELEGATED AUTHORITY. ...............23

A.   Congress Expressly Delegated the Department Discretionary Rulemaking
     Authority to Implement the Exemptions in the 1974 Domestic Service
     Amendments. ...............................................................................23

B.   Congress's Grant of Authority Provides the Department Discretion to
     Determine the Scope and Limits of the Domestic Service Amendments. ....30

     1.   The Supreme Court Has Already Determined that the 1974 Domestic
          Service Amendments Convey Discretion to Enact the Third Party
          Regulation.............................................................................30

     2.   The Authority Conveyed by the 1974 Amendments Includes the
          Discretion to Preclude Third Party Employers from Claiming Either
          the Companionship Services or the Live-In Exemption. .........................34

C.   The 2013 Third Party Regulation Is Reasoned and Within the Bounds of
     the Congressional Delegations. ......................................................37

     1.   The Third Party Regulation Is Consistent with, and Within the Bounds
          of, the Statutory Text..............................................................38

     2.   The Department Supported the Third Party Regulation with an
          Extensive and Reasoned Factual Analysis. .............................................40

     3.   The Department's Emphasis on the Purpose of the 1974 Amendments
          to the FLSA Is Not Unreasonable. ...........................................42

     4.   The Department Is Not Obligated to Keep the 1975 Regulations
          Indefinitely..........................................................................43

     5.   It Is Logical and Appropriate to Treat a Third Party Employer
          Differently from an Individual or Family Employer, Even if They
          Jointly Employ the Same Worker. ...........................................46

II.     THIS COURT SHOULD REJECT DEFENDANTS' CHALLENGE TO
        THE COMPANIONSHIP SERVICES REGULATION................................49

II.     EVEN IF THIS COURT WERE TO DETERMINE THAT SOME OR
        ALL OF THE 2013 RULE IS INVALID, VACATUR IS
        INAPPROPRIATE IN AN ENFORCEMENT ACTION. ............................54

CONCLUSION ......................................................................................................56

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allegheny Def. Project v. FERC,*
    964 F.3d 1 (D.C. Cir. 2020) ................................................................. 47

*Am. Petroleum Inst. v. Env't Prot. Agency,*
    862 F.3d 50 (D.C. Cir. 2017) ............................................................... 56

*Auer v. Robbins,*
    519 U.S. 452 (1997) ............................................................................ 34

*Baeder v. Heckler,*
    768 F.2d 547 (3d Cir. 1985) ................................................................ 55

*Belmont Mun. Light Dep't v. FERC,*
    38 F.4th 173 (D.C. Cir. 2022) ............................................................. 56

*Bostock v. Clayton Cnty,*
    590 U.S. 644 (2020) ............................................................................ 45

*CBOCS West, Inc. v. Humphries,*
    553 U.S. 442 (2008) ............................................................................ 28

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) ............................................................................ 23

*F.C.C. v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ............................................................... 43, 44, 45

*F.E.R.C. v. Elec. Power Supply Ass'n,*
    577 U.S. 260 (2016) ............................................................................ 20

*Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.,*
    145 S. Ct. 898 (2025) ................................................................... 44, 45

*Home Care Ass'n of Am. v. Weil,*
    799 F.3d 1084 (D.C. Cir. 2015) ................................................... Passim

iv

Cases – Continued:

*In re MCP No. 185,*
    124 F.4th 993 (6th Cir. 2025) ............................................. 27

*Long Island Care at Home, Ltd. v. Coke,*
    551 U.S. 158 (2007) .................................................... Passim

*Loper Bright Enters v. Raimondo,*
    603 U.S. 369 (2024) .................................................... Passim

*Mackey v. Lanier Collection Agency & Serv., Inc.,*
    486 U.S. 825 (1988) ............................................................ 36

*Mayfield v. Dep't of Labor,*
    117 F.4th 611 (5th Cir. 2024) ............................................. 34

*Moctezuma-Reyes v. Garland,*
    124 F.4th 416 (6th Cir. 2024) ....................... 25, 28, 29, 36

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
    545 U.S. 967 (2005) ............................................................ 27

*Olmstead v. L.C.,*
    527 U.S. 581 (1999) ............................................................ 12

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.,*
    588 U.S. 1 (2019) ................................................................ 54

*Pension Benefit Guaranty Corp. v. LTV Corp.,*
    496 U.S. 633 (1990) ............................................................ 45

*Pickens v. Hamilton-Ryker IT Sols., LLC,*
    133 F.4th 575 (6th Cir. 2025) ................................... Passim

*Schaffner v. Monsanto Corp.,*
    113 F.4th 364 (3d Cir. 2024)............................................. 26

*Tennessee v. Becerra,*
    131 F.4th 350 (6th Cir. 2025) ............................................. 28

Cases – Continued:

*United States v. Texas*,
  599 U.S. 670 (2023) .................................................................. 55

*Walsh v. KDE Equine, LLC*,
  56 F.4th 409 (6th Cir. 2022) ................................................. 20-21

Statutes

28 U.S.C. § 1291 .................................................................................. 4
28 U.S.C. § 1331 .................................................................................. 4
28 U.S.C. § 1345 .................................................................................. 4

29 U.S.C. § 202(a) ............................................................................... 6
29 U.S.C. § 203(s) ............................................................................. 47
29 U.S.C. § 203(s)(1) ......................................................................... 6
29 U.S.C. § 206(a) ............................................................................... 5
29 U.S.C. § 206(a)(1) ....................................................................... 47
29 U.S.C. § 206(f) ............................................................................... 6
29 U.S.C. § 207 ............................................................................... 4-5
29 U.S.C. § 207(a)(1) .................................................................... 5, 47
29 U.S.C. § 207(*l*) ............................................................................... 6
29 U.S.C. § 213(a)(1) ................................................................... 33, 34
29 U.S.C. § 213(a)(3) .................................................................... 47-48
29 U.S.C. § 213(a)(15) ............................................................... Passim
29 U.S.C. § 213(b)(21) ............................................................... Passim
29 U.S.C. § 216 .................................................................................. 4
29 U.S.C. § 217 .................................................................................. 4

33 U.S.C. § 1312(a) ......................................................................... 36
42 U.S.C. § 7412(n)(1)(A) ............................................ 25-26, 29, 30, 36

Pub. L. No. 87-30, §§ 5, 6, 75 Stat. 65 (1961) ................................... 5
Pub. L. No. 89-601, § 102(c), 80 Stat. 830 (1966) ............................ 5

Fair Labor Standards Amendments of 1974,
  Pub. L. No. 93-259, 88 Stat. 55 (1974) ............................... Passim

Rules

Fed. R. Civ. P. 56(a) ............................................................................... 20
Fed. R. App. Proc. 43(c)(2) ...................................................................... 1

Code of Federal Regulations

29 C.F.R. § 552.109 ........................................................................ Passim
29 C.F.R. § 552.3 ........................................................................... 14, 15
29 C.F.R. § 552.6 ............................................................................ Passim

Other Authorities

*Application of the Fair Labor Standards Act to Domestic Service*,
    40 Fed. Reg. 7404 (Feb. 20, 1975) ...................................................... 8

*Application of the Fair Labor Standards Act to Domestic Service*,
    78 Fed. Reg. 60,454 (Oct. 1, 2013) .............................................. Passim

Admin. Conf. of the U.S. (ACUS), Recommendation 2018-2,
*Severability in Agency Rulemaking*,
    83 Fed. Reg. 30,685 (June 29, 2018) ................................................. 56

119 Cong. Rec. 24 .................................................................................. 11
H.R. Rep. No. 93-913 ........................................................................ 7, 11
H.R. Rep. No. 93-232 ........................................................................ 48-49
S. Rep. No. 93-690 ..................................................................... 7, 11, 13-14

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Although the Secretary of Labor will gladly participate in oral argument to answer questions this Court might have, she believes that oral argument is not necessary as the issues presented may be decided on the parties' briefs.

# No. 25-3128

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### LORI CHAVEZ-DEREMER[1]
Secretary of the United States Department of Labor,

Plaintiff-Appellee,

v.

### AMERICARE HEALTHCARE SERVICES, LLC;
### DILLI ADHIKARI,

Defendants-Appellants.

On Appeal from the United States District Court for the
Southern District of Ohio Eastern Division

## BRIEF FOR THE SECRETARY OF LABOR

For years, Defendants Americare Healthcare Services, LLC and Dilli

Adhikari willfully failed to pay their employees overtime compensation owed

under the Fair Labor Standards Act ("FLSA" or "the Act").[2] A Department of

---

[1] Pursuant to Fed. R. App. Proc. 43(c)(2), Secretary of Labor Lori Chavez-DeRemer is automatically substituted for former Acting Secretary of Labor Julie Su.

[2] During the relevant time period, the regulations at issue in this case were in effect. However, the Department of Labor intends to reconsider these regulations,

Labor regulation promulgated in 2013 prohibits third party employers, such as home care agencies like Defendants, from claiming exemptions from the FLSA's minimum wage and overtime pay requirements for certain domestic service employees. 29 C.F.R. 552.109 ("third party regulation"). The regulation ensures that where, as here, home care workers are employed by third party agencies rather than solely by the recipients of care (or their families), the workers receive the same minimum wage and overtime protections as other professional domestic service employees—just as Congress intended.

The Secretary of the United States Department of Labor ("Department") brought an enforcement action against Defendants in 2021. Rather than paying overtime in compliance with the law, Defendants now challenge the validity of the 2013 regulation. Defendants argue that in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the 2013 third party regulation is unenforceable and therefore they can claim the exemptions and do not have to pay their employees overtime compensation.

The district court correctly rejected this argument. Under *Loper Bright*, the 2013 third party regulation prohibiting Defendants from claiming the exemptions is valid. The regulation represents a reasoned exercise of the express delegation of

---

and may wish to pursue rulemaking in the future to take a different policy approach.

discretionary rulemaking authority that Congress conferred on the Department in 1974 amendments to the FLSA. The two instances in which the Supreme Court has opined on the scope of the rulemaking authority afforded by these specific amendments—in both *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), and *Loper Bright* itself—reinforce this conclusion, as does a close, contextual reading of the amendments' delegation language. Acting within the bounds of this authority, the Department reasonably limited third party employers, such as Defendants, from availing themselves of the exemptions. The Department's rulemaking included extensive consideration of the 1974 amendments, the legislative history of those amendments, and the substantial expansion of the professionalized home health care industry in the decades between the amendments and the 2013 rulemaking.

Because third party agencies, such as Defendants, cannot claim the exemptions, the district court also correctly concluded that the Defendants lack standing to challenge the regulation defining a key term—companionship services—in one of those exemptions, 29 C.F.R. 552.6 ("companionship services regulation"). *See Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1096-97 (D.C. Cir. 2015), *cert. denied*, 579 U.S. 927 (2016) (holding that because third party home care agencies were precluded by 29 C.F.R. 552.109 from claiming the live-in and companionship services exemptions, they could not show that 29 C.F.R. 552.6

caused them injury in fact). Additionally, Defendants waived their challenge to the application of that regulation because they did not raise it as an affirmative defense in this enforcement action. And even if the Court were to reach this issue, the definitional regulation, like the third party regulation, is a reasoned exercise within the scope of clearly delegated authority.

Accordingly, the Secretary of Labor ("Secretary") requests that this Court affirm the district court's judgment against Defendants in full.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 29 U.S.C. 216 and 217, as well as 28 U.S.C. 1331 and 1345. This Court has jurisdiction under 28 U.S.C. 1291. The district court entered final judgment on March 3, 2025, Judgement, RE 127, Page ID # 49068, and Defendants filed a Notice of Appeal that same day, Notice of Appeal, RE 128, Page ID # 49069. The appeal is timely.

## STATEMENT OF THE ISSUES

In this enforcement action brought by the Department, the district court concluded that Defendants were required to pay their home health aides overtime compensation because the Department's 2013 regulation prohibits third party employers, such as home care agencies, from claiming the live-in and companionship service exemptions, and that Defendants willfully violated the

FLSA by failing to pay the required overtime compensation to these employees. 29 U.S.C. 207; 29 C.F.R. 552.109. The questions presented are:

1. Whether the district court correctly concluded that the Department's 2013 third party regulation is enforceable against Defendants.

2. Whether the district court correctly concluded that Defendants lack standing to challenge the regulation that defines the scope of companionship services, 29 C.F.R. 552.6.

<u>**STATEMENT OF THE CASE**</u>

**A.    Legal Background**

1.  The FLSA and Relevant Amendments to the FLSA

The FLSA generally requires covered employers to pay a minimum hourly wage and, for hours of work exceeding 40 in a workweek, overtime compensation at a rate of one and one-half times the employee's regular rate of pay. 29 U.S.C. 206(a), 207(a)(1). Before 1974, to be covered by these minimum wage and overtime provisions, domestic service employees had to be "employed in an enterprise engaged in commerce or in the production of goods for commerce" or be individually "engaged in commerce or in the production of goods for commerce." 29 U.S.C. 206(a), 207(a)(1) (1961); *see also* Pub. L. No. 87-30, §§ 5, 6, 75 Stat. 65, 67-69 (1961) (adding enterprise-wide coverage to FLSA's minimum wage and overtime pay provisions). In 1974, an employer qualified as an "enterprise" if,

among other things, it had more than $250,000 in gross annual sales. 29 U.S.C. 203(s)(1) (1966); *see also* Pub. L. No. 89-601, § 102(c), 80 Stat. 830 (1966) (setting the amount of gross annual sales for enterprise-wide coverage to apply at $250,000 as of February 1, 1969).

In 1974, Congress amended the FLSA. Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55 (1974). Among other provisions, the amendments included a section titled "Domestic Service Workers." *Id.* § 7, 88 Stat. at 62 ("1974 domestic service amendments").[3] In that section, Congress extended the Act's minimum wage and overtime pay requirements to vastly more domestic service employees than had previously been covered by the Act by adding minimum wage and overtime provisions specific to domestic service employees. *Id.* §§ 7(b)(1), (2), 88 Stat. at 62 (codified at 29 U.S.C. 206(f), 207(*l*)). In support of this significant expansion of FLSA coverage, Congress explicitly found that "the employment of persons in domestic service in households affects commerce." *Id.* § 7(a), 88 Stat. at 62 (codified at 29 U.S.C. 202(a)).

At the same time Congress extended the FLSA's wage requirements to more domestic service employees, Congress also added exemption provisions regarding certain circumstances in which the expansion of wage rights would not apply.

---

[3] The 1974 amendments, including the section that comprises the 1974 domestic service amendments, are attached in full in public law format in Addendum A. The Department has added boxes to p. 7 and p. 20 for ease of reference.

First, Congress exempted from both the minimum wage and overtime pay requirements "any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." *Id.*, § 7(b)(3), 88 Stat. at 62 (codified at 29 U.S.C. 213(a)(15)) ("companionship services exemption"). Second, Congress exempted from the overtime pay requirement "any employee who is employed in domestic service in a household and who resides in such a household." *Id*. § 7(b)(4), 88 Stat. at 62 (codified at 29 U.S.C. 213(b)(21)) ("live-in exemption").

The House and Senate Reports accompanying the 1974 amendments stated "[i]t is the intent of the committee to include within the coverage of the Act all employees whose vocation is domestic service." S. Rep. No. 93-690, at 20 (1974); H.R. Rep. No. 93-913, at 36 (1974). Additionally, the bill's sponsor, Senator Williams, in describing what is meant by "companion," stated:

> [T]he situation in which people are in a household not to do household work but are there, first, as babysitters. I think we all have the full meaning in mind of what a babysitter is there for—to watch the youngsters. 'Companion,' as we mean it, is in the same role—to be there and to watch an older person, in a sense.

119 Cong. Rec. at 24,801. Senator Burdick further explained that while being a companion may entail "some work" such as "making lunch for the infirm person," such work was "incidental to the main purpose of employment," which was to "come[] in and sit with" an "aged father" or "aged mother." 119 Cong. Rec. at 24,801.

Congress granted the Department authority to implement the 1974 amendments through legislative rules. Specifically, Congress granted the Department authority "to prescribe necessary rules, regulations, and orders with regard to the [1974 amendments]." Pub. L. No. 93-259, § 29(b), 88 Stat. at 76. Furthermore, as to the 1974 domestic service amendments specifically, Congress authorized the Department to "define[] and delimit[]" the terms "companionship services," "babysitting services," and "domestic service," which Congress did not otherwise define or delimit. 29 U.S.C. 213(a)(15).

2. The Department's 1975 Regulations Implementing the 1974 Domestic Service Amendments

The Department issued regulations regarding the 1974 domestic service amendments in 1975. As relevant here, those regulations set out the types of activities and duties that constituted companionship services, 40 Fed. Reg. 7404, 7405 (Feb. 20, 1975) (codified at 29 C.F.R. 552.6), and provided that the exemptions for companionship services and live-in domestic service employees could be claimed not only by an individual (or family member) who hired a worker

directly, but also by "third party employers" such as agencies whose workforce

works in private homes. *Id.* at 7407 (codified at 29 C.F.R. 552.109). At the time

the 1975 third party regulation was promulgated, the "vast majority" of "private

household workers were employed directly by a member of [the] household,"

rather than by a third party employer. Emp't Standard Admin., U.S. Dep't of

Labor, *Minimum Wage and Maximum Hours Standards Under the Fair Labor*

*Standards Act* at 28 (Jan. 19, 1973) (reporting that "no more than two percent of

the workers within the scope of the survey were in the employ of a household

service business").[4]

3. The Supreme Court's 2007 Decision Regarding the Statutory Delegations of Authority and the 1975 Third Party Regulation

In 2007, the Supreme Court in *Long Island Care at Home, Ltd. v. Coke*, 551

U.S. 158 (2007), upheld the 1975 regulation governing third party employment as

a reasonable exercise of the rulemaking authority that Congress had delegated to

the Department. An employee of a third party home care agency argued that the

Act precluded the regulation permitting third party employers to claim the

companionship services exemption. *Id.* at 166. In rejecting the challenger's

argument, the Supreme Court concluded that "the text of the FLSA does not

expressly answer the third party-employment question." *Id*. at 168. Instead, having

---

[4] Attached in Addendum B.

cited both Pub. L. No. 93-259, § 29(b), 88 Stat. at 76 and 29 U.S.C. 213(a)(15) at the outset of its analysis, the Court concluded, "[t]he statutory language refers broadly to 'domestic service employment' and to 'companionship services'" and "expressly instructs the agency to work out the details of those broad definitions." *Id*. at 167. The Court concluded that "whether to include workers paid by third parties within the scope of the definitions is one of those details." *Id*. It reasoned that "whether, or how, the definition should apply to workers paid by third parties raises a set of complex questions," and that "[s]atisfactory answers to such questions may well turn upon the kind of thorough knowledge of the subject matter and ability to consult at length with affected parties that an agency, such as the [Department], possesses." *Id*. at 167-68. The Court concluded that it is "consequently reasonable to infer (and we do infer) that Congress intended its broad grant of definitional authority to the Department to include the authority to answer these kinds of questions." *Id*. at 168. The Court thus concluded the regulation was valid. *Id.* at 162.

4. The Department's 2013 Rule Updating and Revising the Regulations Implementing the 1974 Domestic Service Amendments

In 2013, through notice and comment rulemaking, the Department amended its 1975 regulations to exclude third party employers from availing themselves of the companionship services and live-in exemptions, to revise the definition of "companionship services," and to revise the definition of "domestic service

employment." 78 Fed. Reg. 60,454 (Oct. 1, 2013) ("2013 Rule"). The Department

concluded that because of "changes to the home care services industry, the home

care services workforce, and the scope of home care services provided," the 1975

regulations "no longer align[ed] with Congress's intent when it extended FLSA

protections to domestic service employees." *Id.* at 60,455.

As the Department explained in the 2013 rulemaking, when Congress

enacted the 1974 amendments, the accompanying House and Senate committee

reports made clear that the companionship services and live-in exemptions were

not intended to apply to workers who have domestic service as their vocation or

who earn their livelihood from such work. 78 Fed. Reg. at 60,454-456; S. Rep. No.

93-690, at 20 (1974); H.R. Rep. No. 93-913, at 36 (1974). In the ensuing decades,

however, the home care industry transformed into a multi-billion-dollar business

with a professional workforce, far from the "neighbor" who casually "sits with" an

older person. 78 Fed. Reg. at 60,454-56 (citing 119 Cong. Rec. 24,801 (1973)

(Sen. Burdick)).

Specifically, "[i]n the 1970s, individuals who had significant care needs

went into institutional settings." 78 Fed. Reg. at 60,458. "Over time, however, our

nation has come to recognize the importance of providing services in private

homes and other community-based settings and of supporting individuals in

remaining in their homes and communities." *Id.* The Department explained that

this "shift is in part a result of the rising cost of traditional institutional care, and has been made possible in significant part by the availability of government funding assistance for home care under Medicare and Medicaid." *Id.* The growing demand for home care services was also due to demographic increases in the percentage of elderly persons in the United States. *Id*. Moreover, the Supreme Court's decision in *Olmstead v. L.C.*, 527 U.S. 581 (1999), which held it is a violation of the Americans with Disabilities Act for public entities to fail to provide services to persons with disabilities in the most integrated setting appropriate, "further solidified our country's commitment to decreasing institutionalization." 78 Fed. Reg. at 60,458.

The 2013 rulemaking record also established a nexus between third party employment and professionalization, explaining that employees of third party agencies often split time between multiple clients, work long hours, and provide comprehensive care services that in earlier decades would have been performed by attendants in facilities such as nursing homes. *E.g.*, *id*. at 60,458 (explaining that the shift from workers providing care in institutionalized settings to workers providing care in homes "has been made possible in significant part by the availability of government funding assistance for home care under Medicare and Medicaid"); *id.* at 60,480 (discussing comments reflecting that home care agencies' employees provide such care as their vocation, often pursuant to

"training requirements and competency evaluations"); *id.* at 60,544 (noting that "[m]any who work overtime accrue long hours in the service of at least a few consumers [i.e., recipients of home care services], traveling between consumer homes during the workweek").

The Department also examined the purpose of the 1974 domestic service amendments and emphasized repeatedly that the changes to the law, when viewed holistically, were meant to expand FLSA coverage and the applicability of the Act's wage provisions to more types of domestic workers. The Department concluded that the amendments were not meant to deny those wage standards to workers who—as employees of larger companies—would historically have been covered through FLSA's existing enterprise coverage provisions and therefore would have been, prior to the 1974 amendments, entitled to the Act's wage provisions. For example, the Department explained that "the 1974 amendments were intended only to expand coverage to include more workers, and were not intended to roll back coverage for employees of third parties who already had FLSA protections" as employees of covered enterprises. *Id.* at 60,481-82 (citing S. Rep. No. 93-690, at 20 (1974) ("The goal of the Amendments embodied in the committee bill is to update the level of the minimum wage and to continue the task initiated in 1961—and further implemented in 1966 and 1972—to extend the basic

protection of the Fair Labor Standards Act to additional workers and to reduce to the extent practicable at this time the remaining exemptions.")).

Because of the vast expansion of the home care industry and growth in the number of third party employers, the Department revised its third party regulation, 29 C.F.R. 552.109, to provide that third party employers may not avail themselves of the exemptions for companionship services or live-in domestic service employees. Specifically, the 2013 regulations limited these exemptions by providing that only an individual receiving companionship services (i.e., the consumer) or members of the consumer's family or household may claim the companionship services exemption or the live-in exemption. 29 C.F.R. 552.109(a), (c). The Department explained that it was making this change "[t]o better ensure that the domestic service employees to whom Congress intended to extend FLSA protections in fact enjoy those protections." 78 Fed. Reg. at 60,454. In addition, the Department amended its companionship services regulation, 29 C.F.R. 552.6, to more clearly define the types of activities and duties that constitute companionship services such that the companionship services exemption applies, and amended the regulatory definition of "domestic service employment," 29 C.F.R. 552.3, to

clarify the language and modernize the list of examples of professions that fall within that category.[5]

The Department recognized that it was "changing its position as to the proper treatment of third party employers," but explained that the change was warranted in light of "the purpose and objectives of the [1974 domestic service amendments] as a whole," the "legislative history," and "the state of the home care industry" as it had developed over the previous decades. 78 Fed. Reg. at 60,482. The Department observed that home care workers employed by third parties in the industry today are "engaged in a formal, professional occupation" and that they "may well be the primary 'bread-winner[s]' for [their] famil[ies]." *Id*. The Department explained that it had accordingly concluded that "employees providing home care services who are employed by third parties should have the same minimum wage and overtime protections that other domestic service and other workers enjoy." *Id.*

Before the 2013 Rule went into effect, a group of trade associations representing third party home care agencies challenged the rule on the grounds that it was not a reasonable interpretation of the statute, and was arbitrary and capricious in violation of the Administrative Procedure Act. The D.C. Circuit

---

[5] 29 C.F.R. 552.109; 29 C.F.R. 552.6; and 29 C.F.R. 552.3 are attached in Addendum C.

unanimously upheld the 2013 Rule, concluding that it was a proper exercise of the

Department's delegated authority. *Home Care Ass'n of Am. v. Weil*, 799 F.3d

1084, 1087 (D.C. Cir. 2015), *cert. denied*, 579 U.S. 927 (2016).[6] Specifically, the

D.C. Circuit found that "[t]he Department has the authority to 'work out the

details' of the companionship-services and live-in worker exemptions, and the

treatment of third-party-employed workers is one such detail," *id*. at 1093 (quoting

*Coke*, 551 U.S. at 165-68), and then found the 2013 Rule to be an "entirely

reasonable" effectuation of Congressional intent, *id*. at 1094.

## B.    Factual and Procedural Background

Defendant Americare Healthcare Services, LLC ("Americare") is an Ohio-

based third party home care company that manages the provision of home health

care services to clients who are elderly or have disabilities. Pl. Mem. in Supp. of

Mot. for Summ. J., RE 112-1, Page ID## 48517-48518. Those services include

assistance with bathing, hygiene, dressing, meal preparation, feeding, making beds,

trash removal, toileting assistance, ambulation, positioning in bed, monitoring

temperature, pulse, and blood pressure, and providing medication reminders. *Id*.

---

[6] Defendants' brief repeatedly refers to the district court's ruling in *Home Care Ass'n v. Weil* as "*Home Care I*" in all citations after the initial reference. Defendants' initial citation correctly notes that the district court's decision was overturned by the D.C. Circuit decision cited herein (referred to by the Department in short form as "*Weil*"). In other words, all cites to *Home Care I* in Defendants' brief are to a decision that the circuit court of appeals unanimously set aside.

Americare's clients receive these services through Ohio's Medicaid waiver programs. Defs. Statement of Undisputed Material Facts, RE 113-3, Page ID# 48603.

Based on the client's needs, a case manager employed by Ohio (or a state subcontractor) creates a plan of care setting forth the services the client is authorized to receive through the relevant Medicaid program. *Id*. The client then chooses a third party agency, such as Americare, through which the services will be provided. *Id*. As an intermediary, Americare receives reimbursement from the state based on the amount of services provided and uses these payments to compensate home health aides, to pay taxes, and for operating expenses. *Id*. Page ID# 48606. Americare hires  home health aides and compensates them on an hourly basis for providing services according to the state's plan of care. *Id*. at Page ID # 48603. Defendant Dilli Adhikari ("Adhikari") is an owner and operator of Americare. *Id.* at Page ID # 48602.

In 2021, the Department filed an enforcement action in the district court for the Southern District of Ohio against Defendants, including alleging that Defendants failed to pay their home health aides overtime compensation as required by the FLSA. Compl., RE 1, Page ID # 1. In their answer, Defendants asserted an affirmative defense that "[t]his lawsuit is premised on an illegal and invalid regulation. 29 C.F.R. 552.109." Answer, RE 42, Page ID # 244.

**C. District Court Decision Granting Summary Judgment to the Department**

On January 9, 2025, the district court granted the Department's motion for summary judgment and denied Defendants' motion for partial summary judgment. Op. and Order, RE 121, Page ID # 49017. The court concluded that Defendants willfully violated the FLSA's overtime requirements and were liable for back wages owed to over 1,700 employees. In reaching that conclusion, and central to this appeal, the court rejected Defendants' argument that the third party regulation was invalid in light of *Loper Bright*.

Specifically, the district court concluded that Defendants may not claim an exemption to the FLSA's overtime pay requirements because 29 C.F.R. 552.109(a) and (c) are valid and "preclude third-party employers like Defendants from claiming the companionship or live-in exemptions." *Id*. at Page ID # 49030. In rejecting Defendants' challenge to the 2013 third party regulation, 29 C.F.R. 552.109, the court concluded that the regulation was a "valid exercise of regulatory authority." *Id*. The district court considered and rejected Defendants' argument that the 2013 third party regulation was invalidated by *Loper Bright*. The court explained that "courts 'need not … and may not' defer to agency interpretations of *ambiguous* statutes[,] … but 'when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.'" *Id*. at Page ID # 49033 (quoting

18

*Loper Bright*, 603 U.S. at 412). The court reasoned that, as to the 2013 third party regulation, "the delegation of statutory authority to [the Department] is clear and unambiguous." *Id*. This is because "both the 1974 Amendments and § 213(a)(15) of the FLSA unambiguously delegate authority to [the Department] to prescribe the rules and regulations to shape the parameters of the exemptions to the FLSA. *See* 1974 Amendments, § 29(b), 88 Stat. at 76 and 29 U.S.C. § 213(a)(15)." *Id*. (internal citations included).

The district court concluded that the Department had the authority to preclude third party employers from claiming both the companionship services and live-in exemptions. The court opined that the Department's "authority to define which employers may claim the exemption was conclusively resolved by the Supreme Court in *Coke*, and *Loper Bright* has not changed that." *Id*. at Page ID # 49035 (internal citations omitted). Furthermore, the district court noted that while *Coke* did not explicitly opine on the live-in exemption, the district court found that the reasoning of *Coke* applied as much to that exemption as it did to the companionship services exemption because the two exemptions were phrased similarly, both left similar details to be filled in, and Congress authorized the Department to "fill in those details." *Id*. at Page ID # 49035-36. Citing *Coke*, the district court explained that "Congress intended for [the Department] to resolve complex questions of whether or how to include workers paid by third parties

within the scope of the [1974 amendment] exemptions." *Id.* at Page ID # 49040.

Thus, the court concluded that the third party regulation was valid. *Id.*

The court further concluded that the third party regulation was neither arbitrary nor capricious. In the 2013 Rule, the Department "'examined the relevant considerations and articulated a satisfactory explanation for its action.'" *Id.* at Page ID # 49042 (quoting *F.E.R.C. v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016)).

Having determined that Defendants were barred from claiming the companionship exemption because they were third party employers, the district court concluded that Defendants lacked standing to challenge the companionship services regulation, 29 C.F.R. 552.6. *Id.* at Page ID # 49043.[7]

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court employs a de novo standard of

---

[7] The district court also concluded that that Defendants' home health aides are employees under the FLSA and not independent contractors (to whom the FLSA would not apply), that Defendants owe $7,478,820.79 in overtime back wages, and an equal amount in liquidated damages to 1,702 employees, and that Defendants violated the FLSA's recordkeeping requirements. The court granted the Department's request to enjoin Defendants from future violations of the FLSA. Because Defendants do not challenge these conclusions or the amount of wages or liquidated damages owed, the Secretary does not address those issues further in this brief.

review of a district court's grant of summary judgment. *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 416 (6th Cir. 2022).

**SUMMARY OF ARGUMENT**

1. Pursuant to Congress's express delegation of rulemaking authority in the 1974 amendments, the Department promulgated regulations in 2013 implementing the companionship services and live-in exemptions to the FLSA's minimum wage and overtime requirements. These 2013 regulations rested on the rulemaking authority established by *Coke*, where the Supreme Court specifically analyzed the source, scope, and nature of the relevant delegations, and determined that the Department had discretion to determine whether third party employers such as Defendants could avail themselves of these exemptions. The Department provided extensive evidence in the 2013 rulemaking that prohibiting third party employers from claiming the exemptions effectuated the purpose of the 1974 domestic service amendments as applied to the professionalized twenty-first century home health care industry.

The regulation is as valid after *Loper Bright* as it was when issued. Indeed, the delegations to the Department in the 1974 amendments are the types of delegation of discretionary rulemaking authority that the Court in *Loper Bright* said reviewing courts "must respect." The Department's promulgation of the third party regulation was reasoned and within the boundaries of the discretionary

authority that Congress delegated to the Department. Thus, *Loper Bright* does not alter the validity of the 2013 third party regulation.

2. Defendants' challenge to the companionship service regulation is equally unavailing and suffers from several independent flaws. As a threshold matter, Defendants lack standing to challenge the companionship services regulation, as the D.C. Circuit concluded when faced with the same question. *Weil*, 799 F.3d at 1096–97. Defendants also waived any challenge to the companionship services regulation because they challenged only the third party regulation, not the companionship services regulation, as an affirmative defense. And even if this Court reaches the merits, Defendants' challenge to this companionship services regulation fails for similar reasons that their challenge to the third party regulation fails. Namely, Congress expressly delegated authority to the Department to promulgate regulations necessary to define and delimit the companionship services exemption, and the Department reasonably exercised that authority when it modified the definition of companionship services in the 2013 Rule.

3. Lastly, if this Court determines that some or all of the challenged 2013 regulations are invalid, it should dismiss the relevant portions of the Department's enforcement action against Defendants rather than vacating the rule. In the alternative, this Court should sever the provisions in the regulations that the Court determines are invalid, if any.

I.    **THE THIRD PARTY REGULATION IS THE PRODUCT OF REASONED DECISIONMAKING WITHIN THE BOUNDS OF THE DEPARTMENT'S EXPRESSLY DELEGATED AUTHORITY.**

This Court recently made clear that, after *Loper Bright*, when determining whether an agency has "permissibly exercised delegated discretion," a court should proceed by "(1) 'recognizing constitutional delegations,' (2) 'fixing the boundaries of the delegated authority,' and (3) 'ensuring the agency has engaged in reasoned decisionmaking within those boundaries.'" *Pickens v. Hamilton-Ryker IT Sols.*, LLC, 133 F.4th 575, 587 (6th Cir. 2025) (quoting *Loper Bright*, 603 U.S. at 395). An application of this analysis to the 2013 third party regulation demonstrates that the regulation is valid and enforceable.

A.    **Congress Expressly Delegated the Department Discretionary Rulemaking Authority to Implement the Exemptions in the 1974 Domestic Service Amendments.**

In *Loper Bright*, the Supreme Court overruled the framework for interpreting statutes administered by federal agencies derived from *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The Court in *Loper Bright* held that the Administrative Procedure Act "requires" that courts "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. at 412. Consequently, after *Loper Bright*, courts

should not "'defer' to an agency's interpretation whenever they face[] an unclear statute." *Pickens*, 133 F.4th at 587 (quoting *Loper Bright*, 603 U.S. at 400).

"In doing away with deference, however, *Loper Bright* did not do away with discretion." *Pickens*, 133 F.4th at 587. *Loper Bright* recognized that "[i]n a case involving an agency, … the statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Loper Bright*, 603 U.S. at 394. The Supreme Court explained that Congress "often" enacts such statutory authorizations, such as by "expressly delegat[ing] to an agency the authority to give meaning to a particular statutory term," "empower[ing] an agency to prescribe rules to fill up the details of a statutory scheme," or authorizing the agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id.* at 394-95 & nn.5-6 (internal quotations omitted). Where "the best reading of a statute is that it delegates discretionary authority to an agency, … the reviewing court …. fulfills [its] role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Id*. at 395 (quotation marks and alternations omitted).

This is such a case. The district court correctly determined that "both the 1974 amendments and § 213(a)(15) of the FLSA unambiguously delegate authority to [the Department] to prescribe the rules and regulations to shape the parameters

of the exemptions to the FLSA." Op. and Order, RE 121, Page ID # 49033. First, in the 1974 amendments to the FLSA, Congress expressly authorized the Department "to prescribe necessary rules, regulations, and orders with regard to" the 1974 amendments. Pub. L. No. 93-259, § 29(b), 88 Stat. at 76. Second, in the section of the 1974 amendments that related to the minimum wage and overtime pay exemption for domestic service workers performing companionship services, Congress instructed the Department to "define[] and delimit[]" the terms in the exemption, which include "domestic service employment" and "companionship services." 29 U.S.C. 213(a)(15).

The 1974 amendments convey clear, intelligible, and express delegations of discretionary authority to promulgate regulations implementing the domestic service exemptions that were created by the 1974 amendments. The statutory delegations here are exactly the sort of express language consistently recognized as conveying discretionary rulemaking authority. *See Loper Bright*, 603 U.S. at 395 n.5 (citing to section 213(a)(15) as an example of a statute that expressly delegates authority to an agency to give meaning to particular statutory terms), n.6 (citing 42 U.S.C. 7412(n)(1)(A) as an example of a delegation of discretionary rulemaking authority where Congress authorized the EPA to regulate power plants "if the Administrator finds such regulation is appropriate and necessary"); *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 420 (6th Cir. 2024) (discussing *Loper Bright*'s

citation to 42 U.S.C. 7412(n)(1)(A), and the "appropriate and necessary" delegation language therein, as an canonical example of when Congress has given delegations of authority that "expressly empower the agency to exercise judgment").

Indeed, the Supreme Court's decision in *Coke* made clear nearly two decades ago that Congress expressly delegated authority to the Department to implement the 1974 domestic service amendments through legislative rules. 551 U.S. at 167 (concluding that the FLSA "expressly instructs the agency to work out the details" of the 1974 amendments). In reaching this conclusion, the Supreme Court recognized that the power "to prescribe necessary rules, regulations, and orders with regard to" the 1974 amendments "provides the Department with the power to fill [statutory] gaps through rules and regulations," including the "scope and definition of statutory terms such as 'domestic service employment' and 'companionship services'" *Coke*, 551 U.S. at 165 (citing Pub. L. No. 93-259, § 29(b), 88 Stat. at 76. and 29 U.S.C. 213(a)(15)); *see also Schaffner v. Monsanto Corp.*, 113 F.4th 364, 381 n.9 (3d Cir. 2024) (citing *Loper Bright* and concluding that a statute authorizing the EPA "to prescribe regulations to carry out the provisions" of the statute is precisely the type of "express" delegation that "empower[s] an agency to prescribe rules to 'fill up the details' of a statutory scheme" and therefore *Loper Bright* "does not undermine the validity" of the EPA

regulations at issue). Notably, as Defendants concede, Defs.' Br. at 41, *Coke* cited to both of these delegations at the foundational outset of its analysis. In doing so, the Supreme Court clearly indicated that both of these provisions constitute relevant sources of the Department's delegated authority. *Coke*, 551 U.S. at 165.

Defendants' repeated contention that *Loper Bright* nullified *Coke* is incorrect. *See, e.g.*, Defs.' Br. at 37 ("[T]he district court mistakenly gave broad *stare decisis* effect to *Coke*'s *Chevron* reasoning after *Loper Bright*."). Certainly, as this Court recently held in *In re MCP No. 185*, 124 F.4th 993 (6th Cir. 2025), where pre-*Loper Bright* statutory analysis rests solely on a finding of agency authority to fill in statutory "ambiguity," that analysis is no longer controlling; in such instances, only holdings regarding "'specific agency actions'" are subject to *stare decisis*. *Id.* at 1002 (quoting *Loper Bright*, 603 U.S. at 412). However, *MCP* addressed materially different *stare decisis* questions than those at issue here. In that case, in considering whether *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs*, 545 U.S. 967 (2005), had decided (and therefore controlled) the relevant questions of statutory interpretation, this Court explained that *Brand X*'s holding rested on a *Chevron*-based assessment that the statutory term at issue "was ambiguous and that the FCC's construction was therefore permissible." *Id*. Thus, this Court emphasized that not only did *Brand X* involve a different agency action,

the statutory "ambiguity" reasoning central to *Brand X* was invalidated by *Loper Bright*. *Id.*

The Court's analysis in *Coke*, however, did not rely on the statutory ambiguity framework rejected by *Loper Bright*. Indeed, "ambiguity" is never even mentioned in *Coke*. Rather, *Coke* located the source of agency authority in two express delegations in the 1974 amendments, and grounded its holding in an analysis of the scope and nature of those delegations. Therefore, Defendants' implication that *Coke*'s citation of *Chevron* renders all of *Coke*'s relevant statutory analysis null is an overreach. *See Tennessee v. Becerra*, 131 F.4th 350, 366 (6th Cir. 2025) (noting that the Supreme Court in *Loper Bright* "cautioned litigants hoping to rehash or relitigate previously settled issues decided on *Chevron* that '[m]ere reliance on *Chevron* cannot constitute a special justification for overruling such a holding'" (quoting *Loper Bright*, 603 U.S. at 376)); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (recognizing that *stare decisis* principles "demand respect for precedent whether judicial methods of interpretation change or stay the same").

In fact, *Loper Bright*'s admonition that courts should adhere to the principle of *stare decisis* has particular force here. As discussed below, to reach its conclusion that the Department had authority to promulgate the then-current third

party regulation, the Supreme Court's decision in *Coke* asked and answered the questions about the scope and nature of delegated authority posed by *Loper Bright*.

Additionally, Defendants' attempt to bolster their arguments by relying on *Moctezuma-Reyes v. Garland*, 124 F.4th 416 (6th Cir. 2024), Defs.' Br. at 42-43, is not persuasive. Because the statutory language in this case contains express delegations of statutory authority (in fact, two such inter-related delegations), contrary to Defendants' suggestion otherwise, *Moctezuma-Reyes* does not present a similar question regarding the scope of delegation as is presented here. Rather, in *Moctezuma-Reyes*, this Court addressed language in an immigration removal statute permitting the government to cancel an alien's removal if the government determines that the removal would result in "exceptional and extremely unusual hardship." 124 F.4th at 419-20. This Court concluded that the language was not similar to language in 42 U.S.C. 7412(n)(1)(A) permitting the EPA to regulate power plants if the Administrator finds such regulation "appropriate and necessary." *Id.* at 420. This Court explained that, although the removal statute's "exceptional and extremely unusual hardship" language may appear to be as broad as the EPA statute's "appropriate and necessary" language, unlike the EPA statute, the removal statute lacked language "vesting" the agency with "discretion to determine the meaning of 'exceptional and extremely unusual hardship.'" *Id.* It was in the context of a statute that lacked an express delegation that this Court

29

opined that such broad and "less than precise" language alone cannot be used to construe "implicit delegations to the agency that warrant deference." *Id.* Because the FLSA provisions at issue here contain express delegations of authority, this Court's concern in *Moctezuma-Reyes* is not implicated in this case.

**B.** **Congress's Grant of Authority Provides the Department Discretion to Determine the Scope and Limits of the Domestic Service Amendments.**

The district court correctly found that "Congress broadly delegated authority" to the Department and "[t]hat authority was not limited to defining domestic service employment and thus applied broadly to the companionship and live-in exemptions." Op. and Order, RE 121, Page ID # 49039 (internal citations omitted). This is because the Department's authority to promulgate rules implementing the 1974 domestic service amendments does not come only from the "define[] and delimit[]" language in 213(a)(15), but also, as the district court concluded, from "Congress's broad grant of authority 'to prescribe necessary rules, regulations, and orders with regard to the' exemptions created therein." *Id.* at Page ID # 49036 (citing 1974 Amendments, Pub. L. No. 93-259, § 29(b), 88 Stat. at 76).

    1. The Supreme Court Has Already Determined that the 1974 Domestic Service Amendments Convey Discretion to Enact the Third Party Regulation.

The Supreme Court has already twice opined on the boundaries of the Congressional delegations to the Department in the 1974 domestic service amendments.

First, *Coke* recognized the discretionary nature of Congress's delegation of authority to the Department. *Coke*, 551 U.S. at 165 (citing both Pub. L. No. 93-259, § 29(b), 88 Stat. at 76, and 29 U.S.C. 213(a)(15)). Specifically, *Coke*, presaging *Loper Bright*, examined the boundaries of those delegations. *Coke*, 551 U.S. at 166 ("examin[ing]" the challenger's "claim[] that the regulation falls outside the scope of Congress's delegation"); *Loper Bright*, 603 U.S. at 395 (instructing that after recognizing statutory delegations of authority to agencies, courts should "fix[] the boundaries of the delegated authority" before evaluating whether the agency's actions are within those boundaries (internal brackets and quotation marks omitted)).

In *Coke*, the Supreme Court explained that when the 1974 domestic service amendments were enacted, the FLSA's minimum wage and overtime requirements already applied to some, but not all, domestic service workers paid by third parties and as a result, "whether or how" the companionship services exemption "should apply to workers paid by third parties raises a set of complex questions." *Coke*, 551 U.S. at 167. Next, the Supreme Court pondered:

> Should the FLSA cover *all* companionship workers paid by third parties? Or should the FLSA cover *some* such companionship workers, perhaps those working for some (say, large but not small) private agencies, or those hired by a son or daughter to help an aged or infirm mother living in a distant city? Should it cover *none*? How should one weigh the need for a simple, uniform application of the exemption against the fact that some (but not all) third-party employees were previously covered?

31

*Id.* (Court's emphases). Crucially, "in finding it within the Department's 'broad grant' of authority to decide 'whether to include workers paid by third parties within the scope' of the companionship-services exemption, the Court explicitly contemplated that the full range of potential outcomes lay within the agency's discretion." *Weil*, 799 F. 3d at 1092 (citing *Coke*, 551 U.S. at 167-68).

Having asked these questions, the Supreme Court then concluded that it is "consequently reasonable to infer (and we do infer) that Congress intended its broad grant of definitional authority to the Department to include the authority to answer these kinds of questions." *Coke*, 551 U.S. at 168; *see also id.* ("[T]he text of the FLSA does not expressly answer the third-party-employment question."). *Coke* found that Congress had instructed the Department to "work out" the definitions of "domestic service employment" and "companionship services," and concluded that "whether to include workers paid by third parties within the scope of the definitions is one of those details." *Id*. at 167.

In *Loper Bright*, the Supreme Court again specifically cited to section 213(a)(15) as an example of when "the statute's meaning may well be that the agency is authorized to exercise a degree of discretion," thereby reinforcing *Coke*. *Loper Bright*, 603 U.S. at 394-95 & n.5. In doing so, *Loper Bright* underlined that Congress delegated the Department discretionary rulemaking authority in the 1974 amendments. *Id*. Thus, the Supreme Court's analysis in *Coke*, bolstered by *Loper*

*Bright*, makes clear that the Department has discretionary rulemaking authority regarding the domestic service employee exemptions, as delegated by Congress in the FLSA's 1974 amendments.

Other courts, including this Court, that have examined similar delegation language have deemed those delegations to be express grants of discretion. This Court recently analyzed delegation language in the FLSA minimum wage and overtime pay exemption at 29 U.S.C. 213(a)(1) for "'any employee employed in a bona fide executive, administrative, or professional capacity' as those 'terms are defined and delimited from time to time by regulations of the Secretary.'" *Pickens*, 133 F.4th at 579 (quoting 29 U.S.C. 213(a)(1)). This delegation language is nearly identical to the phrasing used in the 1974 domestic service amendments at 213(a)(15), which provides for a minimum wage and overtime pay exemption for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." In *Pickens*, the Court found this delegated authority "gave the Secretary two powers, not one." *Pickens*, 133 F.4th at 588. Elaborating, the Court quoted dictionary definitions, noting that "'[d]efine' means to state precisely what something means," *id*. (citing 2 *Oxford English Dictionary* 89 (1st ed. 1933) (def. 6b); *Webster's Dictionary* 688 (2d ed. 1934) (def. 4)), and

"'delimit' means something else—to fix or mark boundaries or limits," *id.* (citing 2 *Oxford English Dictionary* 163 (1st ed. 1933); *Webster's Dictionary* 692 (2d ed. 1934)). Based on these definitions of "define" and "delimit," this Court concluded that "Congress thus gave the Secretary the power not only to say what [key terms in the exemption mean], but also to establish a workable method for applying [the] exemption in practice." *Id.*; *see also Mayfield v. Dep't of Labor*, 117 F.4th 611, 617-18 (5th Cir. 2024) (referring to section 213(a)(1)'s "define and delimit" language as an "uncontroverted, explicit delegation of authority"); *Auer v. Robbins*, 519 U.S. 452, 457-58 (1997) ("The FLSA grants the Secretary broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees.").[8]

> 2. The Authority Conveyed by the 1974 Amendments Includes the Discretion to Preclude Third Party Employers from Claiming Either the Companionship Services or the Live-In Exemption.

The 1974 amendments provide delegated authority for all provisions within the third party regulation, including the provision excluding third party employers from utilizing the live-in exemption, as well as the companionship services

---

[8] The definitions of "define" and "delimit" were materially the same at the time of the 1974 amendments as they were at the time of the initial enactment of the FLSA, when the dictionaries cited by *Pickens* were in circulation. *See Webster's New World Dictionary of the American Language* 370 (2d. ed. 1972) (def. 4) (providing a definition of "define" as "to state the meaning of (a word, etc.)"); *id.* at 373 (providing a definition of "delimit" as "to fix the limits of; mark the boundaries of") (Attached in Addendum D).

exemption. As the D.C. Circuit recognized in *Weil*, Congress framed the companionship services and live-in domestic service employee exemptions with parallel construction. 799 F.3d at 1091. Sections 213(a)(15) and 213(b)(21) use similar phrasing and have overlapping language. Op. and Order, RE 121, Page ID # 49035-36 (quoting 29 U.S.C. 213(a)(15) ("any employee employed in domestic service employment") and 29 U.S.C. 213(b)(21) ("any employee who is employed in domestic service")). Accordingly, the district court correctly determined that the *Coke* Court's characterization of third-party-employer treatment as an "interstitial matter ... entrusted [to] the agency to work out," 551 U.S. at 165, equally applies to the Department's authority under the FLSA's live-in worker exemption. Op. and Order, RE 121, Page ID # 49035-36.

Thus, as the district court correctly concluded, there is "no reason to treat the exemptions differently" regarding the Department's delegated authority, as "both left details or gaps to be filled in, and … Congress authorized [the Department] to fill in those details." *Id*. at Page ID # 49035-36. Indeed, the Supreme Court "invoked the precise terms of § 29(b)'s general grant of implementation authority—the authority 'to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act'—in the portion of its opinion holding that the third-party-employment question had been delegated to the Secretary." *Weil*, 799 F.3d at 1092 (citing *Coke*, 551 U.S. at 165).

Defendants mistakenly argue that the district court's conclusion that "both" the delegation at section 213(a)(15) and the 1974 amendment's delegation at § 29(b), 88 Stat. at 76 (authorizing the Secretary "to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act") serve as sources of agency authority was flawed. According to Defendants, recognizing that Congress conveyed the relevant delegation regarding the exemptions in two parts "makes the express delegation of definitional authority in the companionship-services exemption 'superfluous.'" Defs.' Br. at 45 (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988)). Not so. The delegation at § 29(b) (covering all the 1974 amendments, not just the domestic service amendments, and conveying authority to the Secretary to make rules as "necessary") and the delegation at section 213(a)(15) (instructing the Secretary that it would be necessary to "define and delimit" terms such as "domestic service" and "companionship services") do not conflict or create redundancies. The Supreme Court pointed to similarly phrased delegations in *Loper Bright* as an example of a statutory framework that expressly empowers the agency to exercise judgment. *Loper Bright*, 603 U.S. at 395 n.6 (citing 42 U.S.C. 7412(n)(1)(A) and 33 U.S.C. 1312(a) as delegations of authority "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility"); *see also Moctezuma-Reyes*, 124 F.4th at 420 ("Congress may say that the agency can regulate in accordance

with broad, flexible standards like 'appropriate' and 'reasonable' only when the agency 'finds' those standards have been met or if in its 'judgment' those standards have been satisfied." (citing *Loper Bright*, 603 U.S. at 395 n.6)). Moreover, in suggesting throughout their brief that only the "define and delimit" language conveys a delegation, Defendants are reading out of existence Congress's instruction to "to prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act." 1974 Amendments, Pub. L. No. 93-259, § 29(b), 88 Stat. at 76. Defendants' arguments regarding superfluity are incorrect, and instead, the delegations must be read as a coherent whole, with no single part isolated.

In sum, the delegations of rulemaking authority in the 1974 amendments are the types of delegations of agency discretion that "courts must respect" under *Loper Bright*, 603 U.S. at 394-95 & n.5 (referring to statutes that "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme" or "'expressly delegate[ ]' to an agency the authority to give meaning to a particular statutory term").

## C.     The 2013 Third Party Regulation Is Reasoned and Within the Bounds of the Congressional Delegations.

In 2013, the Department amended its 1975 regulations such that the exemptions for companionship services and live-in employees can be claimed by an individual (or family member) who hires a worker directly, but not by third

party employers such as home care agencies. 78 Fed. Reg. at 60,557; 29 C.F.R. 552.109(a). As is required by the third analytical step of the *Pickens* framework, the Department's regulation limiting third party employers from claiming these exemptions is a reasoned approach within the bounds of Congressionally delegated authority. Indeed, the 2013 regulation expressly adopted one of the potential options identified by the Supreme Court in *Coke*. 551 U.S. at 167-68. While Defendants raise many arguments to the contrary, each ultimately fails.

1. The Third Party Regulation Is Consistent with, and Within the Bounds of, the Statutory Text.

A close review of the statutory text confirms the Department's authority to promulgate the third party regulation; the Department has hewed to Congress's instructions to promulgate regulations "necessary" to effectuate the purpose of the 1974 amendments and to "define and delimit" key terms. Defendants' arguments to the contrary are unavailing.

First, Defendants argue that the use of "any" at the outset of both sections 213(a)(15) and 213(b)(21) precludes the Secretary's authority to limit third party employers from claiming those exemptions. Defs.' Br. at 49 ("[T]he word 'any' has an expansive meaning."). But critically, such an interpretative approach cannot be squared with the Supreme Court's conclusion that "the text of the FLSA does not expressly answer the third-party-employment question." *Coke*, 551 U.S. at 168. It also ignores Congress's delegation to define and delimit key

terms and prescribe necessary rules with regards to the exemptions. Order of operations is crucial in executing Congress's instructions. Here, the statute can only be read such that as a first step, the Department must prescribe necessary rules with regard to the exemptions and define and delimit terms including "domestic service employment" and "companionship services"—which includes the third party employment question—and then, second, exempt "any" employee who falls within those defined and delimited parameters.

In particular, Defendants' proposed interpretation of "any" clashes with Congress's instruction that the Department must "delimit" these concepts as "necessary"; adopting Defendants' interpretation would, given the exponential growth of the home care industry since 1974, risk allowing the exemptions to subsume the coverage expansions provided by the 1974 amendments. As already discussed above, this Court recently found that in the statutory delegation context, in contrast with "define," which means "to state precisely what something means," "'delimit' means something else—to fix or mark boundaries or limits" in order to "establish a workable method for applying [the] exemption in practice." *Pickens*, 133 F.4th at 588 (internal citations omitted). This is precisely what the Department did in promulgating the 2013 third party regulation in light of the massive expansion of the professionalized home care industry.

For related reasons, Defendants' second textual argument also falls short. Defendants argue that the Department has "rewritten" the statute by substituting "employed in domestic service *by* a household" for "employed in domestic service *in* a household" (as the statute actually reads). Defs. Br. at 30-31 (citing section 213(b)(21)). However, the Department has not "rewritten" the statute, and has certainly not inserted "by." As is plain, the third party regulation allows family members who may not live in the consumer's household to claim the companionship services or live-in exemption. 29 C.F.R. 552.109. Thus, the regulation does not limit these exemptions to when the employee is employed in domestic service "by" the recipient of care or domestic services who lives in the household with the employee; in other words, it extends the availability of the exemption to family members who may not live in the household. Therefore, Defendants' "rewriting" argument is inaccurate, and like their argument regarding the use of the word "any," fails to account for the Department's authority to "delimit" key terms in the statutory text.

   2. The Department Supported the Third Party Regulation with an Extensive and Reasoned Factual Analysis.

As further evidence of the "reasoned" nature of the third party regulation, in the context of comprehensive notice and comment rulemaking, the Department explained that its decision to exclude third party employers from being able to claim the companionship services and live-in exemptions was based in large part in

40

the tremendous growth of the home care industry between 1975 and 2013. 78 Fed.

Reg. at 60,482. As the district court found:

> When reversing its policy, [the Department] explained that the home care industry transformed since 1975. Originally, most people received care in an institutional setting, rather than in their homes, and home care workers were employed directly by a member of the household. But over time, people preferred to receive care in their homes. *Id.* Third party agencies grew to meet the increased demand and by the time the Supreme Court decided *Coke*, most home care workers were employed by third-party agencies. Thus, most of the workers in this growing industry were not protected by the FLSA.

Op. and Order, RE: 121, Page ID # 49040-41 (internal citations omitted).

The district court concluded that the Department considered the cost and

accessibility of care when promulgating the third party regulation. *Id*. at Page ID #

49041. The Department's determinations had ample support in the administrative

record, including data from the 15 states that already provided minimum wage and

overtime protections to all or most home care workers employed by third parties,

as well as comments from consumer representatives such as the AARP and

representatives of people with disabilities. 78 Fed. Reg. at 60,483-84. The

Department found that FLSA coverage would benefit not only the affected

workers, "but also consumers because supporting and stabilizing the direct care

workforce will result in better qualified employees, lower turnover, and a higher

quality of care." *Id.* at 60,459-60.

The D.C. Circuit unanimously upheld the 2013 Rule, including the third party regulation, after thoroughly reviewing the Department's reasoning and justification, and the Supreme Court denied certiorari. *Weil*, 799 F.3d at 1087, *cert. denied*, 579 U.S. 927 (2016). The D.C. Circuit agreed with the Department that the 2013 third party regulation was consistent with Congress's intent to include within the FLSA's protections all employees whose vocation is domestic service, *id.* at 1094, and that there was "ample support" in the administrative record for the Secretary's determination that the recipients of home care "would be benefitted, not harmed, by the new regulations," *id.* at 1095.

3. The Department's Emphasis on the Purpose of the 1974 Amendments to the FLSA Is Not Unreasonable.

Like the employers in this Court's recent *Pickens* case that argued that the Department's interpretive approach "focuse[d] too much on purpose and too little on text," *Pickens,* 133 F.4th at 585, Defendants argue that "the Department runs away from the words on the page and invokes 'purpose,'" Defs.' Br. at 33. However, as this Court explained in *Pickens*, "'words are given meaning by their context, and context includes the purpose of the text. The difference between textualist interpretation and so-called purposive interpretation is not that the former never considers purpose. It almost always does,' but 'the purpose must be derived from the text.'" *Pickens* 133 F.4th at 585 (quoting Antonin Scalia & Bryan A. Garner, Reading Law 56 (2012)). In this instance, accordingly, the Department

appropriately considered the "purpose and objectives [of the 1974 amendments] as a whole." 78 Fed. Reg. at 60,497-556. Specifically, the Department explained that given the realities of home care in 2013, i.e., that nearly two million home care workers were "engaged in a formal, professional occupation," excluding employees of third party home care agencies from the FLSA's basic wage provisions "was not in accord with Congress's purpose of expanding coverage" in the 1974 amendments. 78 Fed. Reg. at 60,482.

   4.  The Department Is Not Obligated to Keep the 1975 Regulations
       Indefinitely.

Defendants argue that the Department should not have promulgated a rule in 2013 that was a change from the rule promulgated in 1975. Defs.' Br. at 32-33. However, Defendants' implication that the 2013 regulation is invalid simply because the Department had a different rule in the past is unpersuasive. The Supreme Court has long instructed that agencies are free to change their minds, and that there is "no basis in the Administrative Procedure Act or in our opinions for a requirement that all agency change be subjected to more searching review." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009). Rather, "the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing its position. An agency may not, for example, depart from a prior policy sub silentio or simply disregard rules that are still on the books." *Id.* at 515. This term, the Supreme Court

re-affirmed these principles of review and explained that "the agency does not need to show 'that the reasons for the new policy are *better* than the reasons for the old one.' Nor must it 'provide a more detailed justification than what would suffice for a new policy created on a blank slate.'" *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 918 (2025) (quoting *Fox Television Stations*, 556 U.S. at 515) (emphasis in the original).

Accordingly, as the district court correctly stated, "courts should uphold an agency regulation if the agency has examined the relevant considerations and articulated a satisfactory explanation for its action" and no "greater scrutiny is applied to agency actions that change or reverse a prior policy." Op. and Order, RE 121, Page ID # 49040 (internal quotations omitted). In promulgating the 2013 Rule, the Department offered a thorough explanation for the change to the third party regulation. Specifically, as already discussed above, the Department explained that the 2013 Rule reflects the intent of the 1974 amendments given the change in the homecare industry since the 1975 regulations, i.e., that home care exponentially expanded over several decades, evolving from what were often casual relationships between neighbors into a lucrative, agency-based, largely government-funded industry employing a professionalized workforce. *See, e.g.*, 78 Fed. Reg. at 60,455-58. Further the rule included a comprehensive economic impact analysis and a consideration of the effect on multiple types of stakeholders,

including the impact on recipients of home care services. 78 Fed. Reg. at 60,454-60; *see also Weil*, 799 F.3d at 1095 (affirming that the Department's reasoning for changing the regulation was sound).

Thus, the change that was effectuated by the 2013 Rule is permissible because the Department provided a "reasoned explanation for [its] action," including taking into account how different groups would be impacted by the change. *Fox Television Stations*, 556 U.S. at 514; *Wages & White Lion Invs.*, 145 S. Ct. at 918 (agencies changing positions must "be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account" (internal quotations omitted)).

Similarly, Defendants assert that because Congress amended the FLSA several times between 1975 and 2013 without addressing the third party employer question, the Department was obligated not to alter the regulation in place during that time period. Defs.' Br. at 32-33. Defendants are mistaken. As the Supreme Court has cautioned, "speculation about why a later Congress declined to adopt new legislation offers a 'particularly dangerous' basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt." *Bostock v. Clayton Cnty*, 590 U.S. 644, 670 (2020) (quoting *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990)). Indeed, especially in light of the lack of Congressional intervention after the Department changed

positions in 2013, the absence of legislative action may reflect Congress's agreement with *Coke* that the Department is best positioned to resolve "complex questions" regarding "whether, or how," the FLSA exemptions "should apply to workers paid by third parties." 551 U.S. at 167; *see id.* at 167-168 ("Satisfactory answers to such questions may well turn upon the kind of thorough knowledge of the subject matter and ability to consult at length with affected parties that an agency, such as the [Department], possesses."); *id.* at 165 ("The subject matter of the [prior third party employer] regulation [] concerns a matter in respect to which the agency is expert.").[9]

> 5.  It Is Logical and Appropriate to Treat a Third Party Employer Differently from an Individual or Family Employer, Even if They Jointly Employ the Same Worker.

Defendants argue, without reference to a single FLSA case, that the regulation creates a "paradox" because it makes the applicability of the FLSA's domestic service exemptions to a worker depend on the identity of the worker's

---

[9] Defendants also cite Wage and Hour Advisory Memorandum (WHAM) No. 2005-1, Application of Section 13(a)(15) to Third Party Employers (Dec. 1, 2005), Def. Br. 11, 49, a 20-year-old memo that explained the Department's position under its prior, 1975 regulations. While Defendants cite this memorandum to support their argument, it was written before the Supreme Court's 2007 determination that the text of the FLSA does not answer the third party employment question. Additionally, in the preamble to the 2013 Rule, the Department specifically addressed the 2005 WHAM, recognizing the Supreme Court's holding in *Coke* and further stating that "the WHAM failed to consider the industry changes that have taken place over the decades since the statutory amendment was enacted." 78 Fed. Reg. at 60,482.

employer, and a worker may have one employer that can avail itself of the exemption and one that cannot. Defs.' Br. at 53.[10] Far from being paradoxical, however, the regulation is logical and appropriate.

There are various circumstances in which joint employers of the same employee have different obligations under the FLSA, such as an employee who is jointly employed by one employer that has more than $500,000 in annual revenues and is therefore subject to enterprise-wide FLSA coverage (i.e., all its employees are covered by the FLSA) and one that does not and therefore is not subject to enterprise-wide FLSA coverage. 29 U.S.C. 206(a)(1) (providing for enterprise-wide applicability of minimum wage obligation if the employer is an enterprise engaged in commerce or production of goods for commerce), 207(a)(1) (same for obligation to pay overtime compensation for overtime hours worked), 203(s) (definition of "enterprise engaged in commerce or production of goods for commerce" means, among other things, an enterprise that has an annual gross volume of sales of at least $500,000). Likewise, there are various exemptions that depend on characteristics of the employer, not the employee. *E.g.*, 29 U.S.C.

___

[10] Defendants cite to *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc), and argue that nothing justifies "treating [] employees as 'akin to Schrödinger's cat: both [exempt] and [not exempt] at the same time.'" Defs.' Br. at 53. The unedited quote from the case reads: "Tolling orders, in other words, render Commission decisions akin to Schrödinger's cat: both final and not final at the same time." 964 F.3d at 10. When reviewed in full, this quotation is inapposite.

213(a)(3) (minimum wage and overtime pay exemption only if the amusement or recreational establishment operates less than seven months or has certain annual receipts), 213(a)(6) (same only if an employer uses less than five hundred man-days of agricultural labor), 213(a)(8) (same only for newspapers with circulation of less than four thousand).

Additionally, Defendants' repeated expression of concern for "housewives" who might be subject to "criminal" penalties is misguided. *See, e.g.*, Defs.' Br. at 35 ("Carol Brady, for example, wouldn't go to jail if she failed to pay her live-in maid, Alice, overtime."). This is because the exact language in the third party regulation to which Defendants object as unfairly paradoxical—clarifying that "the individual or member of the family or household … is still entitled to assert the exemption," 29 C.F.R. 552.109(a) and (c)—renders Defendants' stated concerns about such "housewives" moot.[11] Moreover, permitting families and consumers to claim the exemptions is consistent with the statutory intent of those exemptions, as evidenced by the same legislative history that Defendants cite. Defs.' Br. at 8 ("Do we really want to subject housewives to possible criminal penalties for failure to

---

[11] Defendants of course have no standing to raise hypothetical challenges on behalf of consumers and their family members, whose interests and related injuries—for example, a parent's interest in either earning overtime or in finding another caregiver when a child's care plan mandates more than forty hours of direct care per week—are often distinct from the interests of third party home care agencies such as Defendants.

keep these records accurately?" (quoting H.R. Rep. No. 93-232, at 95 (1973))).

The Department's regulatory approach is also consistent with the contemporary realities of home health services in the age of Medicare and Medicaid, where, as discussed above, consumers and/or their family members generally jointly employ workers alongside sophisticated third party intermediary agencies that facilitate state payments.

## II. THIS COURT SHOULD REJECT DEFENDANTS' CHALLENGE TO THE COMPANIONSHIP SERVICES REGULATION.

The district court correctly concluded that Defendants lack standing to challenge the companionship services regulation, 29 C.F.R. 552.6. As the district court reasoned, because third party employers like Defendants cannot invoke the companionship services exemption, they are not injured by the 2013 Rule's change to the definition of companionship services. Op. and Order, RE 121, Page ID # 49042-43.  The D.C. Circuit reached the exact same conclusion in *Weil*, reasoning that the third-party employers there had no standing to challenge the companionship services regulation. *Weil*, 799 F.3d at 1096–97. Additionally, Defendants waived any challenge to the enforcement of the companionship services regulation by failing to raise it as an affirmative defense in their answer, which listed only a challenge to the third party regulation. Answer, RE 42, Page ID # 244. However, if this Court disagrees with the district court's conclusions on Defendants' lack of standing to challenge 29 C.F.R. 552.6 and permits Defendants'

challenge to this particular regulation even though Defendants did not raise it as an affirmative defense, this Court should remand to the district court for briefing and consideration of the merits in the first instance. Defendants agree that this Court may remand in that scenario. Defs.' Br. at 56.

Even if this Court were to reach the merits, Defendants' challenge to this regulation fails. As outlined above with regard to the third party regulation, Congress expressly delegated broad authority to the Secretary "to prescribe necessary rules, regulations, and orders with regard to the" 1974 amendments, Pub. L. No. 93-259, § 29(b), and to "define[] and delimit[]" the terms of the companionship services exemption, 29 U.S.C. 213(a)(15); *Loper Bright*, 603 U.S. at 394-95 & n.5.

The Department exercised this discretionary authority in a reasoned manner within the bounds of the delegations in promulgating the companionship services regulation. As discussed above, in the same paragraph where "casual" babysitters are exempted, the 1974 amendments exempted those employees who are employed in domestic service employment "to provide companionship services" for individuals who because of age or infirmity are unable to care for themselves. 29 U.S.C. 213(a)(15); *see also* 119 Cong. Rec. at 24,801 (Senator Burdick describing companionship services duties as akin to informal babysitting duties). Accordingly, 29 C.F.R. 552.6, as amended in 2013, defines and delimits "companionship

services" as primarily "the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." 29 C.F.R. 552.6(a). "[F]ellowship" means "engag[ing] the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events." *Id.* "[P]rotection" means "to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being." *Id.* Under the definition, companionship services may also include "the provision of care if the care is provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person and per workweek." 29 C.F.R. 552.6(b).

The "care" that may be part of companionship services if performed in limited amounts is defined as assistance with "activities of daily living (such as dressing, grooming, feeding, bathing, toileting, and transferring)" and "instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as meal preparation, driving, light housework, managing finances, assistance with the physical taking of mediations, and arranging medical care)." *Id*. The definition of "companionship services" excludes both medically related services performed by trained personnel (such as nurses)

and services performed "primarily for the benefit of other members of the household." 29 C.F.R. 552.6(c), (d). Section 552.6 is consistent with the text of the FLSA as well as Congress's intent in creating the companionship services exemption, and is within the Department's authority.

The Department provided a thorough explanation of its rationale for adopting this definition in the 2013 Rule, explaining that the 1975 regulation "was written at a time when the scope of direct care work was much more limited and neither Congress nor the Department predicted the developments in home care services that were to come." 78 Fed. Reg. at 60,459. The developments in home care—the increased focus on allowing elderly people and individuals with disabilities to live in their homes and communities rather than in institutions, and the resulting expansion of the home care industry, including the number of workers and types of services provided outside of institutional settings—warranted an update to the definition. *Id*.

Defendants' argument that the Department has excluded "care" from the regulation defining and delimiting "companionship services," *e.g.*, Defs.' Br. at 57 is not accurate. As is plain, the regulation explicitly allows companions to perform some "care" work and still fall under the exemption. Rather, Defendants appear to contest *any* limitation of the amount of cleaning, cooking, and health services that workers can provide and still be deemed "companions" within the meaning of the

statute. Defendants' implied approach, however, cannot be reconciled with the Congressional authorization to "delimit" the companionship services exemption such that the exemption does not swamp the overall goal of the 1974 amendments to expand FLSA coverage to more domestic service workers, and to define and delimit "companionship services" such that it has a similar scope as "babysitting" services.

In the 2013 Rule, the Department explicitly discussed its rationale for the amount of "care" that could be included as part of "companionship services." The Department explained that a limit was necessary to keep the definition of companionship services consistent with the view, as reflected in the legislative history of the 1974 amendments, that "companionship services" primarily means watching over a person, while allowing some tolerance for additional services because doing so was "necessary as a matter of practicality." 78 Fed. Reg. 60,467. The selection of a 20 percent limit was based on historical practice and thus the familiarity of the regulated community with this type of threshold. *Id*. at 60,468-69 (citing other FLSA regulations containing a 20 percent limit).

In further demonstration of the Department's reasoned decision making, the Department explained that guaranteeing FLSA protections to home care workers would benefit recipients of services "because supporting and stabilizing the direct care workforce will result in better qualified employees, lower turnover, and a high

quality of care." *Id*. at 60,459-60. Notably, the rule was supported by a range of home care recipients. *See* AARP comment, 78 Fed. Reg. 60,465; Michigan Olmstead Coalition comment, 78 Fed. Reg. 60,483. Further, the Department relied on comments from consumer advocacy groups, such as the National Association of Area Agencies on Aging, that rebutted claims that narrowing the companionship services exemption would make home care services too costly for consumers. 78 Fed. Reg. 60,468.

## II.    EVEN IF THIS COURT WERE TO DETERMINE THAT SOME OR ALL OF THE 2013 RULE IS INVALID, VACATUR IS INAPPROPRIATE IN AN ENFORCEMENT ACTION.

If this Court agrees with Defendants that some or all of the third party regulation or the companionship services regulation is invalid, the correct remedy is to dismiss the relevant portions of the Department's enforcement action against Defendants. As Justice Kavanaugh explained, "in an enforcement action, a district court does not determine the validity of the agency order. … If the court of appeals in a facial, pre-enforcement action determines that the order is invalid and enjoins it, the agency can no longer enforce the order. *By contrast, if the district court disagrees with the agency's interpretation in an enforcement action, that ruling does not invalidate the order and has no effect on the agency's ability to enforce the order against others*." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 21 (2019) (Kavanaugh, J., concurring in the judgment) (emphasis

added); *Baeder v. Heckler*, 768 F.2d 547, 553 (3d Cir. 1985) (in case reviewing agency's denial of an individual's disability benefits, affirming district court's holding that the challenged regulation was invalid and the district court's directive to the agency to proceed without reference to the invalid regulation, but explaining that district court did not have "the authority to issue an injunction aimed at controlling the [agency's] behavior in every disability case in the country"); *cf. United States v. Texas*, 599 U.S. 670, 696-99 (2023) (Gorsuch, J., concurring) (Administrative Procedure Act's provision permitting courts to "set aside" agency actions should be understood as permitting courts to disregard agency actions, not vacate them). Therefore, Defendants err in urging this Court to vacate the Department's regulations in this context. Defs.' Br. at 5. For the same reason, Defendants' arguments regarding severability in the context of vacatur are not appropriate to this case.

Nevertheless, in the alternative, the Department submits that the 2013 regulations are intended to be severable. For example, the three-pronged "a,b,c" structure of the third party regulation shows that the Department intended those provisions to function independently where, for instance, an employer employed workers who were providing companionship services but were not residing in the home of their employer. 29 C.F.R. 552.109(a), (b), (c). This structure is strong evidence that the Department intended each provision of the rule to be severable if

necessary. Furthermore, were any single provision to be found invalid, the other provisions would still be readily workable. *See Belmont Mun. Light Dep't v. FERC*, 38 F.4th 173, 187–88 (D.C. Cir. 2022) (courts evaluating the severability of agency rules typically consider two factors: (1) the agency's intent and (2) the workability of the rule without the invalid provisions). That is strong evidence that the Department intended the provisions of the third party rule to be severable despite the absence of an explicit severability clause in the 2013 Rule. *See Am. Petroleum Inst. v. Env't Prot. Agency*, 862 F.3d 50, 71 (D.C. Cir. 2017) (concluding "without any substantial doubt that the agency would have adopted the severed portion on its own" where the provisions operated "entirely independently of one another" (quotation marks omitted)); *cf.* Admin. Conf. of the U.S. (ACUS), Recommendation 2018-2, *Severability in Agency Rulemaking,* 83 Fed. Reg. 30,685 (June 29, 2018)[12] ("To date, only a handful of agencies have used these severability clauses.").

## **CONCLUSION**

Defendants' challenges to the enforceability of the Department's 2013 regulations fail. In the wake of *Loper Bright*, these reasoned regulations remain within the bounds of the discretionary authority that Congress conferred on the Department to implement the exemptions in the 1974 domestic service

---

[12] Available at https://www.acus.gov/projects/severability-agency-rulemaking.

amendments to the FLSA. Therefore, the Department requests that this Court affirm the district court's grant of summary judgment to the Department in its entirety.

Respectfully submitted,

JONATHAN L. SNARE
Acting Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

SARAH KAY MARCUS
Deputy Associate Solicitor

RACHEL GOLDBERG
Counsel for Appellate Litigation

AMELIA BELL BRYSON
Senior Attorney

/s/ Lindsey Rothfeder
LINDSEY ROTHFDER
Senior Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210
Email: Rothfeder.lindsey@dol.gov
(202) 693-7052

*Attorney for the Secretary of Labor*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing brief of the Acting Secretary of Labor:

(1) Complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B) and Sixth Circuit R. 32(b) because it contains 12,965 words, including footnotes but excluding the parts of the brief exempted by Fed. R. App. Proc. 32(f) and Sixth Circuit R. 32(b)(1); and

(2) complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft 365 utilizing plain roman style, with exceptions for case names and emphasis, and using Times New Roman 14-point font, which is a proportionately spaced font, including serifs; and


Date: May 28, 2025          /s/ Lindsey Rothfeder
                            LINDSEY ROTHFDER
                            Senior Attorney

                            U.S. Department of Labor
                            Office of the Solicitor
                            200 Constitution Avenue, N.W.
                            Room N-2716
                            Washington, D.C. 20210
                            Email: Rothfeder.lindsey@dol.gov
                            (202) 693-7052

                            *Attorney for the Secretary of Labor*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on May 28, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Lindsey Rothfeder
LINDSEY ROTHFDER
Senior Attorney

U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210
Email: Rothfeder.lindsey@dol.gov
(202) 693-7052