No. 25-3128

# In the United States Court of Appeals for the Sixth Circuit

**U.S. DEPARTMENT OF LABOR,**
*Plaintiff-Appellee,*

**v.**

**AMERICARE HEALTHCARE SERVICES, INC.;
DILLI ADHIKARI,**
*Defendants-Appellants.*

On Appeal from the United States District Court for the
Southern District of Ohio, Eastern Division, 2:21-cv-5076

## REPLY BRIEF

Bruce C. Fox
Daniel McArdle Booker
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
525 William Penn Place,
Suite 1710
Pittsburgh, PA 15219
(412) 566-1500
bruce.fox@obermayer.com

Jonathan Berry
Michael Buschbacher
James R. Conde
  *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, DC 20006
(202) 955-0620
jconde@boydengray.com

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

ARGUMENT ......................................................................................................3

    I.    The Department's Rule (29 C.F.R. § 552.109) Conflicts
        With the Live-in Exemption ..................................................3

        A.    The Department's Argument for Discretion Is
              Foreclosed by *MCP No. 185* ...........................................5

        B.    The Department's Argument for Discretion
              Misunderstands Section 29(b) and *Loper Bright* ........11

        C.    Discretion or Not, the Department Cannot Rewrite
              the Live-In Exemption ...............................................20

    II.    The Department's Rule (29 C.F.R. § 552.109) Exceeds the
        Bounds of the Companionship-Services Exemption............21

    III.    The Rule Must Be Vacated, and the Rule Is Inseverable ....25

        A.    The Court Should Vacate............................................25

        B.    The Court Should Not Sever.......................................29

    IV.    Defendants May Challenge the Department's Definition
        Excluding Care From "Companionship Services" and the
        Rule (29 C.F.R. § 552.6) Is Unlawful...................................30

CONCLUSION .................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Petroleum Inst. v. EPA*,
862 F.3d 50 (D.C. Cir. 2017) ..................................................29

*Baeder v. Heckler*,
768 F.2d 547 (3d Cir. 1985) ..................................................28

*Belmont Mun. Light Dep't v. FERC*,
38 F.4th 173 (D.C. Cir. 2022) ..................................................29

*Biden v. Nebraska*,
600 U.S. 477 (2023) ..................................................16

*Braidwood Mgmt. v. Becerra*,
104 F.4th 930 (5th Cir. 2024) ..................................................28

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ..................................................9

*Citizens Coal Council v. EPA*,
447 F.3d 879 (6th Cir. 2006) ..................................................25

*City of Arlington v. FCC*,
569 U.S. 290 (2013) ..................................................1

*Corley v. United States*,
556 U.S. 303 (2009) ..................................................15

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ..................................................26, 27, 28

*General Electric Co. v. Gilbert*,
429 U.S. 125 (1976) ..................................................17

*Herr v. U.S. Forest Serv.*,
803 F.3d 809 (6th Cir. 2015) ..................................................10

*Home Care Ass'n of Am. v. Weil,*
76 F. Supp. 3d 138 (D.D.C. 2014) (*Home Care I*) ..............................23

*Home Care Ass'n of Am. v. Weil,*
78 F. Supp. 3d 123 (D.D.C. 2015) (*Home Care II*)..............................32

*Home Care Ass'n of Am. v. Weil,*
799 F.3d 1084 (D.C. Cir. 2015) (*Home Care III*) .................................9

*Kentucky v. EPA,*
123 F.4th 447 (6th Cir. 2024) ........................................................26

*Long Island Care at Home, Ltd. v. Coke,*
551 U.S. 158 (2007).................................................. 4, 7, 8, 9, 17, 25

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 ..................................................... 1, 9, 10, 11, 19

*In re MCP No. 185,*
124 F.4th 993 (6th Cir. 2025) .............................................5, 6, 10, 11

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
551 U.S. 644 (2007).....................................................................14

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
545 U.S. 967 (2005).................................................................7, 8

*Panama Refin. Co. v. Ryan,*
293 U.S. 388 (1935)......................................................................18

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.,*
588 U.S. 1 (2019)........................................................................27

*Pickens v. Hamilton-Ryker IT Sols., LLC,*
133 F.4th 575 (6th Cir. 2025) .....................4, 12, 14, 16, 18, 21, 22, 23

*Queen and Crescent Case,*
167 U.S. 479 (1897)......................................................................16

*Rowan Cos. v. United States,*
452 U.S. 247 (1981)..............................................................17, 19

*Sierra Club v. EPA,*
  60 F.4th 1008 (6th Cir. 2023) ...................................................... 26, 28

*Stewart v. Oneal,*
  237 F. 897 (6th Cir. 1916) .............................................................. 26

*Tennessee v. Becerra,*
  131 F.4th 350 (6th Cir. 2025) ........................................................... 8

*United States v. Eaton,*
  144 U.S. 677 (1892) ........................................................................ 16

*United States v. Texas,*
  599 U.S. 670 (2023) ....................................................................... 28

*United States v. Vogel Fertilizer Co.,*
  455 U.S. 16 (1982) ......................................................................... 17

*Util. Air Regul. Grp. v. EPA,*
  573 U.S. 302 (2014) ....................................................................... 20

*West Virginia v. EPA,*
  597 U.S. 697 (2022) ....................................................................... 17

**Statutes**

5 U.S.C. § 551(13) ............................................................................ 26

5 U.S.C. § 703 ............................................................................. 25, 27

5 U.S.C. § 706(2) ............................................................................. 26

29 U.S.C. § 202 ............................................................................... 12

29 U.S.C § 213(a)(15) ..................................................................... 2, 21

29 U.S.C. § 213(b) ........................................................................... 12

29 U.S.C § 213(b)(21) ...................................................................... 1, 3

29 U.S.C. § 216(e)(4) ....................................................................... 16

42 U.S.C. § 7412(n)(1)(A) ................................................................. 19

47 U.S.C. § 201(b) ........................................................5, 8

Pub. L. No. 93-259, 88 Stat. 55 (1974) ......................................5

**Other Authorities**

29 C.F.R. § 552.101 .........................................................22

29 C.F.R. § 552.109 .........................................................2

78 Fed. Reg. 60,454, 60,481 (Oct. 1, 2013) ..................................9

Admin. Conf. of the U.S. Recommendation,
*Severability in Agency Rulemaking* (2018) .................................29

Antonin Scalia & Bryan A. Garner,
*Reading Law: The Interpretation of Legal Texts* (2012) ....................14

Fed. R. Civ. P. 8(e) ........................................................30

*The Random House Dictionary of the English Language*
(2d ed. 1987) .............................................................13

Richard J. Pierce, Jr., *Administrative Law Treatise* § 3.6
(5th ed. 2010) ............................................................9

White House, Press Release, *We Can't Wait: President
Obama Will Announce Administrative Action to Provide
Minimum Wage and Overtime Protections for Nearly 2
Million In-Home Care Workers* (Dec. 15, 2011),
https://perma.cc/ H8EM-H3QS.................................................1

William Shakespeare, *Romeo and Juliet* (1597)..............................4

# **INTRODUCTION**

According to the Department of Labor, a general grant of rulemaking authority in the 1974 Fair Labor Standards Act (FLSA) amendments is a lever that may be used to change the law whenever the Department "can't wait for Congress."[1] The Department's brief, like the decision below, is a throwback to the days of *Chevron* maximalism. The name of the agency game is now *Loper Bright* "discretion," but the upshot is the same: once an agency "locate[s] … a grant of general rulemaking authority over a statute," Article III judges must subordinate their independent legal judgment about the law to an agency's policy-driven views. *City of Arlington v. FCC*, 569 U.S. 290, 322 (2013) (Roberts, C.J., dissenting). This contention walks right past *Chevron*'s "tombstone," and must be roundly rejected. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 417 (Gorsuch, J., concurring).

Under *Loper Bright*, the court must follow the best reading of the statute. On the live-in exemption, 29 U.S.C § 213(b)(21), the best reading

---

[1] The White House, Press Release, *We Can't Wait: President Obama Will Announce Administrative Action to Provide Minimum Wage and Overtime Protections for Nearly 2 Million In-Home Care Workers* (Dec. 15, 2011), https://perma.cc/ H8EM-H3QS.

is that the Department gets no discretion: The exemption is mandatory and plainly covers "any employee who is employed in domestic service in a household and who resides in such household" regardless of whether they work for third parties, *id.* On the companionship-services exemption, the Department gets some discretion to "define[] and delimit[]" the specific terms of the exemption. 29 U.S.C § 213(a)(15). But the Department doesn't even claim that carving out third-party employers from the exemption defines or delimits *any* statutory terms, so the Department is not acting within the bounds of its delegation.

The Court should therefore grant partial summary judgment to Defendants, vacate the Department's rule carving out "third party employment" from the exemptions for domestic service, 29 C.F.R. § 552.109, vacate the judgment of the district court, and remand for further proceedings. Should the Court reach the independent challenge to the Department's definition of companionship services, it should hold that rule unlawful too.

# ARGUMENT

## I. THE DEPARTMENT'S RULE (29 C.F.R. § 552.109) CONFLICTS WITH THE LIVE-IN EXEMPTION

The Department's rule excluding third-party employers, 29 C.F.R. § 552.109, conflicts with the live-in exemption. The live-in exemption covers "any employee" who satisfies the statutory criteria of the exemption, and the identity of the employer is not one of the criteria. 29 U.S.C § 213(b)(21). Ordinary meaning, canons of construction, structure, and history support that conclusion. Defs.' Br. 28–33, ECF 13. Nothing in the exemption turns on who cuts the check. On the exemption's text, the Department therefore loses.

The Department knows that. After all, for forty years, the Department agreed with Defendants' best reading. Defs.' Br. 11. So, to avoid the text, the Department asks this Court to tip the scales of justice in the agency's favor, by allowing the agency "discretion" to narrow the scope of the live-in exemption. Like the district court, the Department claims that the general rulemaking authority in section 29(b) of the FLSA amendments of 1974 gives the agency discretionary power to narrow or "delimit" the exemptions. DOL Br. 35. And like the district court, the Department argues that because the live-in exemption has features that "parallel" the

3

companionship-services exemption, the Supreme Court's *Chevro*n-driven decision in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), means that it gets to carve out third-party employers, if it wants to. DOL Br. 35. In all but name, that is a request to restore the "ancien régime of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*" *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587 (6th Cir. 2025); *cf.* William Shakespeare, *Romeo and Juliet*, act 2, sc. 2, ll. 47–48 (1597) ("What's in a name? That which we call a rose by any other name would smell as sweet").

The Court should reject the Department's administrative counter-revolution for three independent reasons. First, the Department's argument is foreclosed by *MCP No. 185*. The Department's bungling effort to distinguish the case only makes the conflict more apparent. Second, the Department misreads section 29(b) and *Loper Bright*—general rulemaking grants do not allow agencies discretion to narrow mandatory exemptions. Third, even if the Department had discretion to narrow the live-in exemption, it loses anyway. Discretion under *Loper Bright* does not include a license to re-write mandatory FLSA exemptions, as the Department's rule does.

## A. THE DEPARTMENT'S ARGUMENT FOR DISCRETION IS FORECLOSED BY *MCP NO. 185*

Section 29(b), like similar many other routine general rulemaking grants, allows the Secretary of Labor to "prescribe necessary rules, regulations, and orders with regard to the" 1974 FLSA amendments. Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (codified at 29 U.S.C. § 202 (note)). Like the district court, the Department argues that section 29(b), coupled with *Coke*'s *Chevron*-driven reasoning, give the Department unlimited discretion to carve out disfavored third-party employers from the live-in exemption, so long as the Department provides a rational basis for its policy. *See* DOL Br. 35, 38–40.

The Department's argument is squarely foreclosed by *MCP No. 185*, 124 F.4th 993, 1002 (6th Cir. 2025). The Department's failure to distinguish the case underscores the point.

In *MCP No. 185*, this Court applied *Loper Bright* to the Communications Act of 1934, which, like many other statutes, includes a general rulemaking authority. *See* 47 U.S.C. § 201(b) ("The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter."). In *MCP No. 185*, the FCC relied upon this general rulemaking authority. *See* 124 F.4th at 999

(citing the provision and noting that the law "empowers the FCC with regulatory authority"). Yet, in *MCP No. 185*, the Court still followed the "plain meaning" of the term "information service," without affording the FCC any interpretive discretion to narrow the term. *Id.* at 1009. Notwithstanding "the exponential growth of the [telecommunications industry] since" 1934 and the FCC's reliance upon a general rulemaking grant, the Court determined the single best reading of the statutory provision at hand. *Cf.* DOL Br. 39.

*MCP No. 185* also rejected the FCC's argument that the reasoning, and even the "holding," of the Supreme Court's prior decision in *Brand X* interpreting the Communications Act survived *Loper Bright*'s overruling of the *Chevron* framework. In *MCP No. 185*, as here, the FCC adopted a different rule, so *Brand X* had no remaining legal force. 124 F.4th at 1002–03. *MCP No. 185* therefore forecloses the Department's contention that *Chevron*-inspired reasoning of *Coke* "has particular force here." DOL Br. 28. It has no force.

The Department's brief confirms that *MCP No. 185* controls. The Department asserts that *MCP No. 185* addressed "materially different *stare decisis* questions than those at issue here." DOL Br. 27. According

to the Department, the material difference is that unlike in *Brand X,* the magic word "'ambiguity' is never even mentioned in *Coke.*" DOL Br. 28. That difference is anything but material.

The word "gap," *Chevron*-speak for an implied delegation to resolve a statutory ambiguity, is used eight times in *Coke.* 551 U.S. at 165–74. As in *Chevron, Brand X* uses the word "gap" interchangeably with a statutory ambiguity implying a tacit delegation from Congress. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). Agencies and courts don't get to evade *Loper Bright* by using loose synonyms for the *Chevron* test. No longer do agencies win when the statutory text is unclear, vague, equivocal, murky, fuzzy, abstruse, or whatever other synonym for "ambiguous" the agency comes up with. Nor do agencies win because the text "does not expressly answer" or directly answer the agency's question at a sufficiently narrow level of generality, and so contains implied "gaps," DOL Br. 38, without calling that lack of specificity statutory "silence."

The Department also claims that *Brand X* turned "*solely* on a finding of agency authority to fill in statutory 'ambiguity,'" without reference to a general rulemaking authority. DOL Br. 27–28 (emphasis added).

7

That's wrong. *Brand X*, like *Coke* or any *Chevron* case decided after *Mead*, begins by explaining that because the Communications Act provides the FCC with general rulemaking authority to administer the law, the FCC's rules interpreting the statute are eligible for deference. *Compare Brand X*, 545 U.S. at 980–81 (citing 47 U.S.C. § 201(b)), *with Coke*, 551 U.S. at 165 (citing section 29(b)). *Coke*'s reliance upon section 29(b) is therefore no basis to distinguish *Coke* from *Brand X*, or this case from *MCP No. 185*.

Last, the Department claims that "*Coke* … did not rely on the statutory ambiguity framework rejected by *Loper Bright*." DOL Br. 28. That's also wrong. *Coke* "was a *Chevron* case down to its bones." *Tennessee v. Becerra*, 131 F.4th 350, 372 (6th Cir. 2025) (Kethledge, J., dissenting in part and concurring in the judgment in part).

Like *Brand X*, *Coke* begins by citing *Chevron* and by discussing the Department's rulemaking authorities as sufficient delegations at step zero of *Chevron*, citing *Mead*, a *Chevron* framework case. *Coke*, 551 U.S. at 165. *Coke* then observes, without much analysis, that the companionship-services exemption has "gaps" and that "the text of the FLSA does not expressly answer the third-party-employment question"—the classic

determination of an implied delegation from ambiguity at step one of *Chevron*. *Id.* at 165, 168. In *Chevron*'s words, "Congress has not directly addressed the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), *overruled by Loper Bright*, 603 U.S. 369. *Coke* then ends by explaining that the Department's 1975 rule is binding on the public under the *Chevron* framework because the Department had gone through the necessary formalities to claim deference, including "notice-and-comment procedures," citing the decision in *Mead* again. *Coke*, 551 U.S. at 173–74. From beginning to end, *Coke* applied the *Chevron* framework.

Indeed, until *Loper Bright*, the Department always read *Coke* as a *Chevron* case. *See* 78 Fed. Reg. 60,454, 60,481 (Oct. 1, 2013). So did the D.C. Circuit, at the Department's urging. *See Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015) (*Home Care III*); Defs.' Br. 21, 40. The leading treatise also describes the Supreme Court's decision in *Coke* as an application of *Chevron*. Richard J. Pierce, Jr., *Administrative Law Treatise* § 3.6 (5th ed. 2010) (noting that in *Coke*, "[t]he Court applied *Chevron* deference"). *Coke* is a *Chevron* decision through and through.

Because *Coke* applied the *Chevron* framework to find a "gap," it is not "overreach" to argue that *Coke* doesn't survive *Loper Bright*. DOL Br. 28. That conclusion follows from *MCP No. 185*: just as *Brand X* doesn't survive *Loper Bright*, neither does *Coke*—aside from the specific rules upheld in those cases, they are no longer good law. *See* 124 F.4th at 1002–1003. No "special justification" is necessary to overrule *Coke*'s reasoning, because *Loper Bright* abrogates the framework used to decide *Coke*. *Loper Bright* would demand a "special justification" only to overrule *Coke*'s holding that the prior 1975 rule is valid and binding, not other "issues." *Compare Loper Bright,* 603 U.S. at 376, *with* DOL Br. 28. But even that holding ceases to bind when the agency adopts a different rule, as here. *MCP No. 185*, 124 F.4th at 1002–1003. Under *MCP No.* 185, the Court must clear the rubble, not keep building on top of *Coke*'s crumbled foundation.

Indeed, this case should be even easier to resolve than *MCP No. 185. MCP No. 185* at least involved the same provision previously interpreted in *Brand X*. Here, by contrast, the Department seeks "to extend" *Coke*'s reasoning to the live-in exemption by analogy, making this the easy case after *Loper Bright. See Herr v. U.S. Forest Serv.*, 803 F.3d 809,

817 (6th Cir. 2015). At a minimum, this Court should not extend the abrogated and flawed reasoning of *Coke* by analogy to a different provision, as the Department asks.

The Court should indeed "adhere to the principle of *stare decisis*." DOL Br. 28. *Stare decisis*, however, cuts against the Department. *MCP No. 185*, 124 F.4th at 1002–1003. The Department's claim of discretion to narrow the scope of the live-in exemption would leave the public "in an eternal fog of uncertainty," contrary to *Loper Bright* and the very purpose of *stare decisis*: legal stability. *Loper Bright*, 603 U.S. at 411; *see also id.* at 448 (Gorsuch, J., concurring) ("*Stare decisis*'s true lesson today is not that we are bound to respect *Chevron*'s 'startling development,' but bound to inter it."); *cf.* DOL Br. 1–2 n.2 ("[T]he Department of Labor intends to reconsider these regulations, and may wish to pursue rulemaking in the future to take a different policy approach."). The Court should follow the best reading of the live-in exemption and lift the fog, not foster continued instability in the law.

**B.    THE DEPARTMENT'S ARGUMENT FOR DISCRETION MISUNDERSTANDS SECTION 29(B) AND *LOPER BRIGHT***

The Department's argument for discretion also conflicts with the best reading of both section 29(b) and *Loper Bright*'s examples. A general

rulemaking authority does not authorize an agency to alter a mandatory command given by Congress, and *Loper Bright* doesn't suggest otherwise. Indeed, the Department's exception would swallow *Loper Bright*'s rule of *de novo* review. That alone is a sufficient reason to reject the Department's argument.

### 1. The Best Reading of Section 29(b) Forecloses the Department's Argument

Section 29(b), again, allows the Secretary of Labor to "prescribe necessary rules, regulations, and orders with regard to the" 1974 FLSA amendments. 29 U.S.C. § 202 (note). The live-in exemption provides that overtime "shall not apply with respect to … any employee who is employed in domestic service in a household and who resides in such household." *Id.* § 213(b). The Department asserts that section 29(b) allows the agency discretion to narrow the live-in exemption whenever the Department thinks it "necessary" to update the law. DOL Br. 39. In other words, the Department claims that section 29(b) vests the agency with discretion to amend the FLSA.

That is not the best reading. Under this Court's precedent, the text of the statute must "unambiguously convey" the delegation the agency claims. *Pickens*, 133 F.4th at 587. No such unambiguous delegation is

apparent here. Section 29(b) authorizes the Secretary to prescribe "rules," to be sure, but rules come in many forms. As Defendants have explained, general grants of rulemaking authority, such as section 29(b), are ordinarily best read to authorize rules of executive administration such as directives, procedural rules, interpretive rules, policy statements, and the like, governing the activities of the executive branch. Defs.' Br. 44. These rules are useful to bind executive employees such as administrative law judges. But after *Loper Bright*, section 29(b) cannot unambiguously delegate a binding power to narrow the live-in exemption. Such a delegation could only be implied, if at all, from *Chevron*'s fiction that ambiguity or silence delegates power to agencies, but *Chevron* has been overruled.

Text, structure, and context cut against the Department's reading of section 29(b). First, section 29(b) does not expressly authorize carve-outs of any kind. The word "necessary" authorizes only rules that are "essential, indispensable, or requisite." *The Random House Dictionary of the English Language* 1284 (2d ed. 1987). The live-in exemption, however, is self-executing, so no rule is necessary: Courts may interpret and apply

the exemption without a rule, so a rule is not "essential, indispensable, or requisite" to carry out the exemption.

The live-in exemption is also mandatory, not discretionary: Overtime pay "shall not apply" to certain employees, period. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 112 (2012) ("The traditional, commonly repeated rule is that *shall* is mandatory and *may* is permissive."). This mandatory text "indicates a command that admits of no discretion on the part of the person instructed to carry out the directive." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 661 (2007). Nothing in the FLSA, therefore, gives the Department discretion to carve out disfavored employers from the live-in exemption. Quite the opposite: Congress was clear that the exemption is mandatory. The live-in exemption therefore gives the Department "no room at all to maneuver, leaving [this Court] with the responsibility to honor the statute's single, best meaning, fixed at the time of enactment, whether the agency has the same view or not." *Pickens*, 133 F.4th at 588 (cleaned up).

The Department claims that this reading ignores "Congress's instruction that the Department must 'delimit' these concepts as

'necessary.'" DOL Br. 39; *see also id.* 40 (same). There is no such "instruction" in the live-in exemption. Nothing in section 29(b) or the live-in exemption says that the Department may "delimit" the terms of mandatory exemptions; only the companionship-services exemption says that. Like *Chevron*, the Department's arguments rests upon a fiction.

Canons of construction also undercut the Department's reading. The companionship-services exemption shows that Congress knows how to delegate discretion to delimit exemptions and did not do so when enacting the live-in exemption. Defs.' Br. 44–45. Further, the Department's reading of section 29(b) would make the specific delegation to "define[] and delimit[]" terms in the companionship-services exemption insignificant, "at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up).

The Department has no response. It asserts that its reading of section 29(b) would not "create redundancies." DOL Br. 36. But the agency never explains that fleeting conclusion. Instead, the Department counters that Defendants' reading would make *section 29(b)* surplusage,

"reading [it] out of existence." DOL Br. 37. But that is wrong: Section 29(b) does important work by authorizing all manner of rules binding on executive branch employees. That is no small matter given that civil penalties are adjudicated by functionally independent administrative law judges. *See* 29 U.S.C. § 216(e)(4). Section 29(b) therefore does work, just not the kind of legislative work the Department imagines.

Context and precedent also reinforce this Court's rule that Congress must "unambiguously convey" the delegation the agency claims. *Pickens*, 133 F.4th at 587. "Background legal conventions … are part of the statute's context." *Biden v. Nebraska*, 600 U.S. 477, 511–12 (2023) (Barrett, J. concurring). The governing background legal convention before *Chevron*, when section 29(b) was enacted, was that Congress must delegate *legislative* rulemaking authority "distinctly." *See United States v. Eaton*, 144 U.S. 677, 688 (1892); *Queen and Crescent Case*, 167 U.S. 479, 505–06 (1897); Defs.' Br. 44.

For example, in 1981, the Supreme Court interpreted a similarly worded general rulemaking provision in the tax code. As the Supreme Court held, when, as here, a court can measure the agency's "interpretation against a specific provision," general rulemaking grants do not

provide discretion. *Rowan Cos. v. United States*, 452 U.S. 247, 253 (1981); *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 (1982). Or as the Supreme Court explained in *General Electric Co. v. Gilbert* in 1976—just two years after the 1974 FLSA amendments—courts assume that Congress only confers legislative discretion in the clearest of terms, for example, by expressly stating that the agency's rules "shall have the force of law" or by providing "under the enabling statute" that violating the rules of the agency alone will "supply the basis for imposition of liability." 429 U.S. 125, 141 (1976). Otherwise, at most, only *Skidmore* applies to agency interpretations. *Id.*[2] With *Chevron* overruled, *Rowan* and *Gilbert* should control here.

This Court's precedent requiring an unambiguous delegation also reflects common-sense and constitutional principles. Courts should not lightly assume that Congress, in an "ancillary provision of the Act," without any substantive content, gave the Department discretion to reshape mandatory statutory exemptions affecting significant slices of the U.S. economy. *Cf. West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (cleaned up).

---

[2] That explains why, when the Department promulgated the "third-party employer" rule in 1975, the agency classified the rule as interpretive. *Coke*, 551 U.S. at 173–74.

And given the lack of any intelligible principle in section 29(b), interpreting the provision to authorize the Department to narrow the FLSA's exemptions whenever the agency deems an update "necessary" and just "can't wait for Congress" would raise serious non-delegation questions, triggering the canon of constitutional avoidance. *See Panama Refin. Co. v. Ryan*, 293 U.S. 388, 430 (1935); *cf. Pickens*, 133 F.4th at 588 ("[N]o one in this case contends that this delegation exceeds Congress's constitutional authority because it lacks an intelligible principle."). The Court should avoid raising such questions here, by reading section 29(b) narrowly.

2. *The Best Reading of* Loper Bright *Forecloses the Department's Argument*

The logic of *Loper Bright* independently forecloses the Department's argument that section 29(b) authorizes substantive discretion to carve out employees from mandatory exemptions. It is enough to say that under *Loper Bright*, section 29(b) cannot possibly be enough to trigger "discretion," or else the "discretion" exception would swallow the APA's general rule of *de novo* review and the examples carefully mentioned by the Court in *Loper Bright*'s footnotes. Defs.' Br. 42–43. This is not a close call.

The Department claims that section 29(b) is "exactly the sort of express language" *Loper Bright* had in mind. DOL Br. 25. The Department compares section 29(b) to the provisions discussed in footnote six of *Loper Bright*: specifically, to EPA's duty under the Clean Air Act to regulate hazardous air pollutants from coal-fired power plants "if [EPA] finds such regulation appropriate and necessary." 42 U.S.C. § 7412(n)(1)(A); *see also Loper Bright*, 603 U.S. at 395 n.6 (also citing 33 U.S.C. § 1312(a)). The Department claims that section 29(b) is a "similarly phrased delegation[]." DOL Br. 36.

Not even close. Section 29(b) and 42 U.S.C. § 7412(n)(1)(A) both use the word "necessary," but that is where the similarities end. One rule specifically delegates to EPA the discretion to decide whether it is a good idea to impose more emission controls on coal-fired power plants. The law is not self-executing, and involves largely a question of policy and technical judgement, not of legal interpretation. Section 29(b), by contrast, is an ordinary general rulemaking authority that confers no specific substantive authority, and as in *Rowan*, the Court may measure the agency's "interpretation against" the text of the live-in exemption without second-guessing the Department's policy views. *Rowan*, 452 U.S. at 253. For the

19

analogy to hold, section 29(b) would have to delegate to the Department the authority to exclude third-party employers from the live-in exemption if the Department finds "such regulation appropriate and necessary." The Department's inapt comparison only proves just how far the Department has strayed from the limited exceptions to *de novo* review recognized in *Loper Bright*.

### C. DISCRETION OR NOT, THE DEPARTMENT CANNOT REWRITE THE LIVE-IN EXEMPTION

The Department's plea for discretion—really, *Chevron* deference— is also academic. After all, even during the days of *Chevron*, courts still followed the "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). Rewrite is what the rule does: Under the Department's rewrite, the live-in exemption would read, in effect: "any employee who is employed in domestic service ~~in~~ **by** a household **or family member** and who resides in such household." *See* Defs.' Br. 31.

The Department's brief confirms the rewrite. The Department claims that the agency "has not 'rewritten' the statute, and has certainly not inserted 'by.'" DOL Br. 40. Why not? Because its rule also "extends

20

the availability of the exemption to family members who may not live in the household." *Id.* But that just proves the re-write. The Department has re-written the statute not just once, but twice. The Department has blue-penciled the preposition "in" and replaced it with "by," *and* then also added "or family member" after "household." Rewriting the statute not just once, but twice, doesn't make a rewrite any more lawful.

The Department cannot escape the obvious: discretion or no discretion, 29 C.F.R. § 552.109 conflicts with the live-in exemption.

## II. THE DEPARTMENT'S RULE (29 C.F.R. § 552.109) EXCEEDS THE BOUNDS OF THE COMPANIONSHIP-SERVICES EXEMPTION

The rule excluding third-party employers, 29 C.F.R. § 552.109, also exceeds the bounds of the Department's delegation of delimiting authority under the companionship-services exemption.

"All agree that [the companionship-services exemption] expressly delegates discretionary authority to the Secretary of the Department of Labor": namely, to define or delimit the specific terms of the exemption. *Pickens*, 133 F.4th 588; 29 U.S.C. § 213(a)(15). In particular, the Department's brief focuses on the delegation to "delimit" terms. DOL Br. 39. Delimit means "to fix or mark boundaries or limits." *Pickens*, 133 F.4th at 588. In other words, the Department has a degree of discretion to say

not just what the terms in the exemption mean (to define), but also to say what they do *not* mean (to delimit).

The Department knows how to exercise its authority to delimit terms. For example, the Department's domestic service regulations delimit the term "domestic service employment" by excluding "[e]mployees employed in dwelling places which are primarily rooming or boarding houses." 29 C.F.R. § 552.101. That regulation is within the bounds of the Department's delegation to delimit terms because it excludes boarding houses from the term "domestic service employment."

The same cannot be said of 29 C.F.R. § 552.109. Unlike the Department's rule excluding boarding houses, the Department's rule excluding third-party employers defines and delimits no particular terms in the exemption, nor does the rule purport to operationalize a means of sorting out the boundaries of any term. The Department does not and cannot point to any term that it is delimiting. The Department, for example, does not argue that the rule is a "workable method" of identifying who works in "domestic service employment." *Pickens*, 133 F.4th at 588–89. The Department is therefore not exercising its delegated authority to narrow the terms of the exemption, but simply excluding employers by fiat, in a

22

regulation divorced from text. Judge Leon was not wrong; just ahead of the times; "there is no explicit—or implicit—delegation of authority to the Department" to exclude disfavored employers by fiat. *See Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014) (*Home Care I*) (Leon, J.); Defs.' Br. 50.

It also doesn't make "good sense" to draw lines based upon the identity of the particular employer at issue in the case at hand. *Pickens*, 133 F.4th at 588. Indeed, a rule simply declaring third-party employers ineligible under the exemption results in a paradox at war with the text of the exemption: The same employee is exempt, but not exempt, at the same time, for one joint employer (for example, a family member) but not another (a third-party agency). That doesn't make "good sense." It makes no sense. Defs.' Br. 52–53.

The Department responds by pointing out that "[t]here are various circumstances in which joint employers of the same employee have different obligations under the FLSA," for example, when one employer falls below the $500,000 coverage threshold. DOL Br. 47. But this reinforces the argument: Unlike the coverage provisions, the companionship-services exemption is not one of those "various circumstances." The

exemption applies to an employee, so under the exemption, an employee is either exempt or not exempt. It makes no textual sense to say that an employee may be exempt and not exempt at the same time, for some employers but not others. Congress knows how to treat joint employers differently for coverage, but it did not do so in the companionship-services exemption.

As explained earlier, *MCP No. 185* also forecloses the Department's reliance upon *Coke. See supra* Part I.A. Regardless, even if *Coke* survives in some form, the Department misunderstands the Supreme Court's reasoning in *Coke*. The best reading of *Coke*'s reasoning in context is that the term "domestic service employment" is ambiguous with respect to third-party employers, and thus, that the Department "may well" have leeway to limit the term "domestic service employment" to exempt all companionship workers, or only some. 551 U.S. at 167. The Supreme Court, however, never contemplated an entirely atextual reading where a home-care aid is covered, and not covered, at the same time. And the Department never disputes that the rule is not delimiting the term "domestic service employment." In our adversarial system, that concession

should be fatal. *See Citizens Coal Council v. EPA*, 447 F.3d 879, 905 (6th Cir. 2006) (en banc).

## III.   THE RULE MUST BE VACATED, AND THE RULE IS INSEVERABLE

The Department also disputes, for the first time, questions of remedy. The Department argues that vacating the rule would be improper, and that the rule is inseverable. The Department never raised these objections in district court, so they are forfeited. *See generally* DOL's Memorandum in Opposition, R.114, Page ID #48,774–809. In any event, the Department's objections fail.

### A.   THE COURT SHOULD VACATE

The Department argues that the Court may not vacate 29 C.F.R. § 552.109 because Defendants are challenging the validity of a rule in an enforcement proceeding, not in a pre-enforcement proceeding. DOL Br. 54–55. That makes no difference. Because 29 C.F.R. § 552.109 is unlawful, it should be vacated.

Section 703 of the APA provides that "agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement." 5 U.S.C. § 703. Section 706 of the APA defines the scope of judicial review to include "hold[ing] unlawful and set[ting] aside agency action" that is

"not in accordance with law." *Id.* § 706(2). "[A]gency action" includes rules, *id.* § 551(13) and to set aside means to vacate, *see Stewart v. Oneal*, 237 F. 897, 906 (6th Cir. 1916) ("Vacate means to annul, set aside, or render void.").

The APA thus "certainly" authorizes, and presumptively requires, vacatur. *Sierra Club v. EPA*, 60 F.4th 1008, 1021 (6th Cir. 2023) ("Reviewing courts certainly have the power to vacate an agency action they find unlawful."); *see also Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring) ("[T]he APA authorizes vacatur of agency rules."). As far as Defendants can tell, this Court has *never* refused to vacate an illegal agency action properly challenged in the case before it. *Kentucky v. EPA*, 123 F.4th 447, 472 (6th Cir. 2024). The Department thus asks the Court "to break new ground." *Id.*

It makes no difference that Defendants challenge the validity of the rule as defendants rather than by raising an anticipatory defense in a declaratory action as plaintiffs. Vacatur is equally appropriate in pre-enforcement and enforcement actions when a Defendant raises an APA claim and challenges the validity of the regulation. Just as the APA

"prescribes the same 'set aside' remedy for all categories of 'agency action,'" *Corner Post, Inc.*, 603 U.S. at 830 (Kavanaugh, J., concurring), the APA prescribes the same "set aside" remedy in all judicial proceedings, ranging from "actions for declaratory judgments" to "civil or criminal proceedings for judicial enforcement," 5 U.S.C. § 703.

The Department cites three non-binding opinions to support its argument. DOL Br. 54–55. None moves the needle.

First, the Department cites Justice Kavanaugh's concurring opinion in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1 (2019); DOL Br. 54. But that case did not involve judicial review under the APA or a government enforcement action. It involved two private parties, where "neither party had challenged the order's validity." 588 U.S. at 5 (majority op.); *see id.* at 8–9 (Thomas, J., concurring in the judgment). By contrast, Defendants here have raised the claim in their answer that "[t]his lawsuit is premised on an illegal and invalid regulation," which is "unlawful" under the APA. Answer at 7, ECF No. 42, Page ID #244. If Defendants are correct on the merits of their APA claim, then the rule should be vacated.

Second, the Department cites Justice Gorsuch's concurrence in *United States v. Texas*, arguing more broadly that vacatur is not available for rules under the APA at all. 599 U.S. 670, 696–99 (2023) (Gorsuch, J., concurring in the judgment); DOL Br. 55. It's an interesting argument, but this Court has already held that "courts certainly have the power to vacate an agency action they find unlawful," *Sierra Club*, 60 F.4th at 1021, and a non-binding concurring opinion doesn't justify departing from precedent. And other Justices, including Justice Kavanaugh, disagree with Justice Gorsuch on this question. *Corner Post, Inc.*, 603 U.S. at 830 (Kavanaugh, J., concurring).

Third, the Department cites the Third Circuit's non-binding decision in *Baeder* holding that courts cannot "issue an injunction … [for] every disability case in the country," 768 F.2d 547, 553 (3d Cir. 1985). But that says nothing about the "distinct" vacatur remedy at issue here, *see Braidwood Mgmt. v. Becerra*, 104 F.4th 930, 951 (5th Cir. 2024). Vacatur is not an injunction.

Vacatur is the proper remedy. But in any event, the Court should at least declare 29 C.F.R. § 552.109 invalid and grant partial summary judgment to Defendants.

**B.    THE COURT SHOULD NOT SEVER**

The Court should invalidate 29 C.F.R. § 552.109 if it conflicts with *any* exemption. As the Department admits, the Department did not add a severability clause to the rule, DOL Br. 56, so "the default remedy is to vacate the entire rule," Admin. Conf. of the U.S., Recommendation, *Severability in Agency Rulemaking* (2018). There is also at least "substantial doubt" that the agency would have adopted the rule only in part, for example, only paragraph (a), as doing so might have the unintended consequence of encouraging home-care aides to live with their clients. *Am. Petroleum Inst. v. EPA*, 862 F.3d 50, 71 (D.C. Cir. 2017). Moreover, the Department's brief confirms that, in its view, the provisions of the rule are "intertwined." *Belmont Mun. Light Dep't v. FERC*, 38 F.4th 173, 188 (D.C. Cir. 2022). At every turn, the Department's brief *conflates* the provisions, and the Department offers the same legal and policy justifications for both. *See, e.g.*, DOL Br. 35 (arguing that "Sections 213(a)(15) and 213(b)(21) use similar phrasing and have overlapping language."). Having defended the rule as one, the Department cannot turn around and argue that the rule may be severed into its various constituent paragraphs.

## IV. DEFENDANTS MAY CHALLENGE THE DEPARTMENT'S DEFINITION EXCLUDING CARE FROM "COMPANIONSHIP SERVICES" AND THE RULE (29 C.F.R. § 552.6) IS UNLAWFUL

Should the court invalidate 29 C.F.R. § 552.109, the Court could also address the validity of the Department's definition of companionship services, 29 C.F.R. § 552.6, or instruct the district court to address that question on remand. If the Court reaches the issue now for the sake of efficiency, it should invalidate the rule.

The Department argues that Defendants waived a challenge to the rule by failing to include an affirmative defense explicitly challenging this definition under the APA. DOL Br. 49. To the contrary, Defendants squarely raised the companionship-services exemption as an affirmative defense in their answer and squarely challenged the Department's unlawful definition of companionship-services in their motion for partial summary judgment. Defs.' Reply in Support of Partial Summary Judgment, R.116, Page ID #48,880–81. Nothing else is required to preserve the issue. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Defendants' argument that the Department's definition of "companionship services" is unlawful is simply a necessary legal

predicate to successfully raise the companionship-services exemption—the actual affirmative defense.

On the merits, the Department doesn't dispute that its rule virtually abolishes the companionship-services exemption by excluding all but incidental care from the exemption: As the Department knows, there is no labor market for "fellowship" (e.g., watching television or playing cards) or "protection" (i.e., sitting around) for the elderly and the disabled, so the Department's definition renders the exemption virtually insignificant. Indeed, the essence of companionship services for the elderly and the disabled consists in helping them with tasks of daily living, such clothing, feeding, toileting, transferring, and bathing. Defs.' Br. 58. Excluding that kind of care unless it is incidental guts the textually-derived purpose of the exemption: aiding elderly and disabled individuals "unable to care" for themselves.

In support, the Department cites yet another floor statement from one representative comparing companionship-services for the elderly and disabled to babysitting. DOL Br. 50. As Judge Leon explained, however, this comparison only undermines the Department's definition of companionship services:

> Babysitters—good ones, at least—do not simply sit and stare at their charges, ready to call for assistance if something should go wrong. And their duties can extend far beyond playing games or making conversation. Babysitters provide care—assistance with activities of daily living and instrumental activities of daily living—to the extent the children they are watching are unable to care for themselves. A babysitter, particularly one sitting for an infant or toddler, often is responsible for feeding, bathing, and changing the clothes and diapers of the child…. If the Department believes otherwise, its staff needs to spend some more time with children!

*Home Care Ass'n of Am. v. Weil*, 78 F. Supp. 3d 123, 128 (D.D.C. 2015) (*Home Care II*), *rev'd on other grounds*, *Home Care III*, 799 F.3d 1084. "Although Congress has not defined the outer bounds of companionship services, it has spoken on the precise issue presented here, which is whether that definition must include, in a meaningful way, the provision of care. The answer is yes." *Id.* If the Court reaches the issue, then the Court should vacate 29 C.F.R. § 552.6.

<u>**CONCLUSION**</u>

This Court should grant partial summary judgment to Defendants, vacate 29 C.F.R. § 552.109, vacate the district court's judgment, and remand for further proceedings. The Court should also vacate 29 C.F.R. § 552.6 or instruct the district court to address the validity of that rule on remand.

Dated: June 18, 2025

Respectfully submitted,

Bruce C. Fox
Daniel McArdle Booker
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
525 William Penn Place,
Suite 1710
Pittsburgh, PA 15219
(412) 566-1500
bruce.fox@obermayer.com

/s/ James R. Conde
Jonathan Berry
Michael Buschbacher
James R. Conde
  *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Avenue NW
Suite 900
Washington, DC 20006
(202) 955-0620
jconde@boydengray.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned certifies that this brief:

(i)    complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,346 words; and

(ii)    complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook.

Dated: June 18, 2025

/s/ James R. Conde
James R. Conde
*Counsel of Record*

# CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I further certify that all parties in this case are represented by counsel who are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 18, 2025

/s/ James R. Conde
James R. Conde
*Counsel of Record*